**People of the State of Illinois, Defendant in Error, v. Jose Soto, Plaintiff in Error.**

**Gen. No. 50,166.**

First District, Fourth Division.

September 24, 1965.

■■■■■■

Donald L. Padgitt, of Evanston, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Willie M. Whiting, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Defendant was indicted for the unlawful sale of a narcotic drug. Judgment was entered on a jury verdict

of guilty, and defendant was sentenced to the penitentiary for a term of ten to fifteen years. Ill Rev Stats 1961, ch 38, § 22–3. The Supreme Court issued a writ of error and appointed counsel for defendant, but later transferred the case to this court.

There is testimony in the record which, if believed, establishes defendant's guilt beyond a reasonable doubt. And the question of the witnesses' credibility is, of course, a matter for the jury, so we would not reverse on the argument that a different conclusion should have been reached in the trial court. We do feel compelled to reverse, however, on the ground that the judge abused his discretion by unduly limiting cross-examination of a key witness for the State.

As disclosed by the record, Richard Sbragia was living with his wife at 1453 W. Madison Street, Chicago, on the date of the alleged offense, March 13, 1962. They were both users of heroin. Sbragia had known police officers Parker, Daniels and Brown of the Narcotics Detail for about a year. He telephoned Daniels who, with Parker and a policewoman, went to Sbragia's apartment at 6:00 p. m. The officers searched Sbragia, found no narcotics, gave him ten dollars in currency (having pre-recorded the numbers of the bills) and drove him to Madison and Loomis Streets. There Sbragia entered a tavern and for some five minutes was out of sight of the continuing police surveillance. Sbragia testified that he saw defendant in the tavern and asked him if he could buy two bags of heroin; that defendant said he would have to go home to get them. Both men then left the tavern and defendant walked south on Loomis Street. Sbragia waited on the street for about ten minutes when defendant returned and they met on the sidewalk in the middle of the block. Sbragia said that he then gave the ten dollars to defendant and received two tinfoil packages in return. As an arranged signal to the policemen, Sbragia tipped his hat to indicate that a sale had been completed, and officers

Parker and Daniels closed in on defendant to make the arrest. As they did so, defendant made a motion with his left hand and threw the prerecorded currency to the ground. Both defendant and Sbragia were arrested. Sbragia handed two tinfoil packets to Daniels who conducted a field test indicating that their contents were narcotics. The Crime Laboratory later made more complete tests, with the same conclusion.

When Sbragia and defendant were standing together on the sidewalk the officers were watching them from a distance of fifteen to twenty feet. Daniels said he saw "an exchange of hands" in which each appeared to hand "something" to the other. Parker testified that he did not see the tinfoil packets pass from defendant to Sbragia.

From the above recital of facts it can be seen that because of the fact that Sbragia—a "Special Employee"—was in the tavern beyond the view of the officers for five minutes, and because of the fact that neither policeman actually saw the tinfoil packets of heroin handed to Sbragia by defendant, the evidence of the police officers and the evidence of the informer were both necessary in mutual corroboration. The testimony of Sbragia, therefore, was of extreme importance to the establishment of the State's case.

■ ■ Sbragia was an admitted narcotics addict at the time of the sale in question, and had then been working with the police as an informer for some months. While the testimony of such a person may be sufficient to prove guilt it has, nevertheless, been pointed out by the Supreme Court many times that his testimony must be carefully and closely scrutinized, and that his addiction must be considered as having an important bearing on his credibility, e. g., People v. Bazemore, 25 Ill2d 74, 76, 77, 182 NE2d 649; People v. Boyd, 17 Ill2d 321, 326, 161 NE2d 311. An addict informer who arranges a sale and purchase of narcotics for the police, may or may not be an accomplice, but his testimony must be subjected to

98

the same suspicion. See People v. Hamby, 6 Ill2d 559, 562, 129 NE2d 746; People v. Crump, 5 Ill2d 251, 256, 125 NE2d 615, and cases there cited.

██ ██ The application of these principles requires the trial court to exercise its discretion with more than ordinary liberality in the matter of cross-examination. And in ordinary circumstances the rule is that "the widest latitude should be allowed the defendant in cross-examination for the purpose of establishing bias." People v. Naujokas, 25 Ill2d 32, 37, 182 NE2d 700; People v. Warfield, 261 Ill 293, 325, 103 NE 979. This is not a newly-established procedural right, but, so far as we know, traces its origin to the early evolution of the adversary system itself.

██ The cross-examiner of an addict-informer-accomplice must be permitted to make searching exploration of such a person's mind, limited only by the questioner's own resourcefulness in penetrating a known propensity for deceit, and an impaired capacity to observe, retain and relate accurately. Defendant's principal point on this appeal is that the court so restrained defense counsel in cross-examination of the witness Sbragia as to constitute reversible error. We agree.

Although the jury was not permitted to hear testimony on the subject, it appears that at the time of defendant's trial the witness Sbragia was resident in the county jail. It also appears that he had been arrested along with the defendant, and by the time of trial had been working as an informer, or "Special Employee" of the police department for almost a year. He had also been taken into custody on other occasions by police officers of the Narcotics Detail and had been held to the grand jury as recently as the month before defendant's trial.

██ Under these circumstances the status of the witness vis-a-vis the police department and the State's Attorney, his interest in the outcome of defendant's case, his expectation of favorable action in his own situation,

and, in general, his complete environment, bias and motivation were legitimate subjects of inquiry on cross-examination. Yet every attempt made by defense counsel along these lines was thwarted by the court's sustaining of objections interposed by the State's Attorney.

Specific questions were asked of Sbragia concerning his recent hold-over to the grand jury, his being an inmate of the county jail at the time of the trial, other charges against him, and his association and work with the police officers. To all of these questions objections were sustained, some on the ground that the questions pertained to a point in time prior to March 13, 1962 (the date of defendant's arrest), some on the ground that they pertained to a point in time subsequent to that date, and, finally, the court stated, "We're talking about March 13, 1962; anything that happened before or after that is immaterial." Further, officer Daniels testified that he knew where Sbragia was living at the time of the trial, but was not permitted to state where.

Two cases are controlling here and dictate reversal of this conviction. They are People v. Mason, 28 Ill2d 396, 192 NE2d 835, and Alford v. United States, 282 US 687. Mason also involved an indictment charging the unlawful sale of narcotics. Conviction was reversed and the cause remanded for a new trial because the defense was denied the right to inquire whether two witnesses for the State had been arrested and indicted, and were being held in federal custody. Justice Solfisburg wrote at pages 400–403:

> A witness may be impeached by attacking his character by proof of conviction of an infamous crime. (Ill Rev Stat 1961, chap 38, par 734.) For this purpose only conviction may be proved, and proof of arrests, indictments, charges or actual commission of crime are not admissible. (People v. Hoffman, 399 Ill 57; People v. Newman, 261 Ill 11.) The

rule prevailing in most jurisdictions and supported by the great weight of authority is that it is not permissible to show that a witness has been arrested, charged with a criminal offense, or confined in prison, or to inquire as to such fact upon cross-examination, where no conviction is shown, for the purpose of impairing his credibility. Anno 20 ALR2d 1421, 1425.

However, showing interest or bias on the part of a witness is also an accepted method of impeachment, and even in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. Anno 20 ALR2d 1421, 1440.

. . . . . .

In the present case we have not only the apparent arrest and indictment of one, if not two, of the State's witnesses, but also their suspension as narcotics investigators, in which very capacity they arrested the defendant and are now testifying against him. Since the informer did not testify, the inspectors were the sole witnesses to the alleged sale of narcotics. Under these circumstances the defendant had a right to cross-examine to show whatever bias or prejudice the witnesses might have. The effect of such evidence in determining whether or not the witnesses were in fact biased or prejudiced would be for the consideration of the jury.

The scope of cross-examination is generally within the trial court's discretion. However, the widest latitude should generally be allowed the defendant in cross-examination for the purpose of establishing

101

bias. (People v. Naujokas, 25 Ill2d 32.) In the present case the trial court cut off all inquiry on subjects with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error.

 The court also quoted from the Alford opinion. That case involved reversal of a conviction for using the mails to defraud. Justice Stone stated at pages 691–694:

> Cross-examination of a witness is a matter of right. The Ottawa, 3 Wall 268, 271. . . .
>
> Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. Knapp v. Wing, 72 Vt 334, 340; Martin v. Elden, 32 Ohio St 282, 289. It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. . . .
>
> The present case, after the witness for the prosecution had testified to uncorroborated conversations of the defendant of a damaging character, was a proper one for searching cross-examination. The question "Where do you live?" was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed. . . .

But counsel for the defense went further, and in the ensuing colloquy with the court urged, as an additional reason why the question should be allowed, not a substitute reason, as the court below assumed, that he was informed that the witness was then in court in custody of the federal authorities, and that that fact could be brought out on cross-examination to show whatever bias or prejudice the witness might have. The purpose obviously was not, as the trial court seemed to think, to discredit the witness by showing that he was charged with crime, but to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution. (Citing cases.) Nor is it material, as the Court of Appeals said, whether the witness was in custody because of his participation in the transactions for which petitioner was indicted. Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross-examination that his testimony was affected by fear or favor growing out of his detention. . . .

. . . The trial court cut off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error.

The conviction of defendant in the instant case is reversed and the cause remanded to the Circuit Court of Cook County for a new trial.

Reversed and remanded.

McCORMICK, P. J. and DRUCKER, J., concur.