**People of the State of Illinois, Defendant in Error, v. Sebron Beard, Plaintiff in Error.**

**Gen. No. 50,072.**

First District, Fourth Division.

January 21, 1966.

 

Ralph B. Long, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Willie Whiting, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Sebron Beard, defendant, was indicted for murder. The case was tried before a jury in the Criminal Court of Cook County. The jury rendered a verdict finding the defendant guilty. His motions for a mistrial, for a directed verdict, for a new trial, and in arrest of judgment were overruled. Judgment was entered on the verdict and he was sentenced to a term of 50 years in the state penitentiary. He brought a writ of error to the Supreme Court of Illinois which court transferred the case to this court.

In this court defendant argues that many alleged errors were committed in the trial court; among others, that the court erred in admitting into evidence People's Exhibit One—a revolver; in restricting the cross-examination of the State's principal witness; in ruling that the defendant's request addressed to the Assistant State's Attorney for statements of witnesses taken before trial would be refused unless the request was made in the presence of the jury; and in preventing the defendant from having a fair trial because of the prejudicial conduct and remarks of both the trial judge and the Assistant State's Attorney.

85

The evidence in the trial court on behalf of the People was that the decedent was a part-time employee at the Anchor Inn Tavern in Chicago. The proprietor of that establishment refused to further serve defendant Beard at about 10:30 or 11:00 p. m., on February 24, 1961. Beard left the premises and returned almost immediately. The decedent, Homes, went up to Beard, talked with him for two or three minutes, then escorted him out of the tavern. Ten or fifteen minutes later a gun went off, and Homes was dead. The People's key witness, Jearlean Rubio, testified that she had seen the two men "tussle" with each other in front of the Anchor Inn; that Beard pushed Homes onto the hood of an automobile, and Beard then came up with a gun. She turned her head away and heard the gun go off three times. When she looked back Beard was standing over Homes and was holding the gun in his hand. Homes staggered into the street before collapsing and dying. The police arrived about fifteen minutes later, arrested the defendant, and charged him with murder. The police took a gun which the defendant was holding in his hand.

The defendant took the stand in his own behalf and testified that when the decedent pushed him out of the door the defendant asked him if he was crazy, whereupon the decedent kicked him. The defendant started to grab him and "he came up with this gun." The defendant then grabbed for the gun and the two men started tussling over it. During the struggle the gun went off and Homes toppled over dead. The defendant also testified that the gun was not his, nor did he have it on his person prior to the tussle. By the testimony an issue was raised as to whether or not the gun belonged to the decedent and as to whether or not it was discharged while the defendant and the decedent were struggling for its possession.

██ The defendant urges that the alleged murder weapon was improperly introduced into evidence. The

record shows that the State's witness, Police Officer Peter Duffy, on direct examination was shown a revolver marked "People's Exhibit One for Identification," and he stated that it was the revolver he had seen in the defendant's hand at the scene of the crime. The defense attempted to cross-examine the witness regarding the gun. Counsel for defendant asked, "Is this gun registered, Officer?" The question was repeated as to whether the serial number was registered. The police officer was asked if a ballistics test was made on the gun. To all of these questions the court sustained the State's objections. As we have indicated, there was an issue as to whether or not the gun taken from the defendant was his gun. When the court sustained the objections of the People the defendant moved for a mistrial. The court denied his motion, overruled his objection, and admitted the gun into evidence. The ruling of the court that the gun might be admitted into evidence was not erroneous. People v. Germany, 28 Ill2d 154, 190 NE2d 713; People v. Lenhardt, 340 Ill 538, 173 NE 155; People v. Bernette, 30 Ill2d 359, 197 NE2d 436; People v. Jones, 22 Ill2d 592, 177 NE2d 112. As we have stated, however, we believe it was error to have restricted cross-examination to the extent indicated.

It is next urged that the trial court erred in restricting the cross-examination of Jearlean Rubio, who was the State's principal witness. Defense counsel attempted to cross-examine Rubio regarding whether or not she had been arrested for disorderly conduct the evening before the trial and held overnight at the County Jail. The trial judge refused to permit the cross-examination and refused to permit counsel for defendant to make an offer of proof. Under Ill Rev Stats 1961, c 38, §§ 587 and 734, a witness may be cross-examined for the purpose of destroying his credibility only where he has been convicted of an infamous crime. Infamous crimes include murder, rape, indecent liberties with a

child, perjury, kidnaping, burglary, etc. Disorderly conduct is not such an infamous crime, and furthermore, Rubio had not been convicted of such an offense, but only arrested and held on a charge. In the case before us, however, it was not intended to discredit the witness generally, but only to bring out that she had been charged with a criminal offense in order to show that the witness might be coloring her testimony because of an offer of immunity or leniency in an independent proceeding, or because of the coercive effect of her detention. People v. Soto, 64 Ill App2d 94, 212 NE2d 353; Alford v. United States, 282 US 687, 75 L Ed 624, which case is cited with approval in People v. Mason, 28 Ill2d 396, 192 NE2d 835. In the instant case the defendant wished to bring this evidence before the jury so that the jury could consider Rubio's testimony in the light of the fact that she was detained in jail by the People. In our opinion, the cross-examination of Rubio was unduly restricted, and this ruling by the trial court was error.

It is also urged by the defendant that the jury was improperly informed of the existence of prior statements made by witnesses (including Rubio) before such statements were identified and used by either the State or the defendant. At three points in the trial the defense, out of the presence of the jury, requested the People to deliver over any statements which the State's witness may have given to the State's Attorney or to the police prior to the trial. Each time the court told the defense that such a request had to be made in the presence of the jury and overruled defendant's objections to such procedure. On each occasion the court instigated the request by asking in the presence of the jury if the defendant wanted the statements. The defendant answered that he did, and in each case moved for a mistrial. The motions for mistrial were denied. Thereafter, the State's Attorney, in the presence of the jury, offered to stipulate to the statements and again the court overruled defense

objections and motions for mistrial. The defense argues that such a procedure practically forced defendant's counsel to use the statements or run the risk of giving the jury the impression that the statements contained no impeaching material. The defendant further argues that it is well settled that if an impeaching writing contains matter which is irrelevant or incompetent only such parts of the writing as are contradictory or inconsistent with the testimony need be read to the jury. (Citing Davis v. Commercial Fuel & Service Co., 318 Ill App 225, 47 NE2d 506 (Abst) ; ILP Witnesses § 233.)

██ It has been held that the defendant has the right to make a demand on the People for the production of statements. People v. Wolff, 19 Ill2d 318, 167 NE2d 197, cert den 364 US 874. In that case the court held that a demand for such statements can be made after direct examination of the State's witnesses, and that if the prosecution claims the statement is privileged, irrelevant or incompetent, the trial court is to examine the statement to determine whether such claims are justified. If the statement is shown to be relevant, competent and not privileged, the court shall order the statements delivered directly to the accused for his inspection and use for impeachment purposes. It was further held in that case that once a statement or report is shown to contain related material, only the defense is equipped to decide whether it has value for impeachment. Citing People v. Neiman, 30 Ill2d 393, 197 NE2d 8; and People v. Edmunds, 30 Ill2d 538, 198 NE2d 313.

In the instant case, in the presence of the jury, the State's Attorney turned over the requested statements as ordered by the court and further offered to stipulate as to the contents of the statements. The defendant argues that this was error and cites Helgesen v. Chicago Suburban Water & Light Co., 156 Ill App 541. In that case the plaintiff's attorney in a personal injury action stated in the presence of the jury that a statement, the

89

admissibility of which was under consideration by the trial judge, flatly contradicted what a defendant's witness had testified to. The Appellate Court reversed a judgment for the plaintiff on the ground that the plaintiff's attorney had announced the substance of the contents of a writing which had not been properly admitted.

In the instant case the State's Attorney, in his argument to the jury, discussed the testimony of Rubio and said, "Did she tell any different story than she ever told? Actually, it is the very statement she made to the police and I gave it to him." Counsel for the defendant objected and asked for a mistrial. The objection was overruled and the mistrial denied. The State's Attorney then continued, "And I gave it to him. Did he show you jurors any contradictory statements that she previously gave to the police? No, he didn't."

Under the ruling in the Helgesen case, when the defendant is required to ask the People in the presence of the jury for a statement made by a witness, and when the State's Attorney in the presence of the jury, upon turning over the statement to defense counsel, offers to stipulate that the statement is authentic, it would seem that the defense attorney is put in the position of having to use the statement or appear to be hiding something from the jury. Before the defendant's counsel examines the statement it is impossible for him to tell whether or not he would wish to use it and whether or not it contains inadmissible hearsay.

The People in their brief cite People v. Gilbert, 12 Ill2d 410, 147 NE2d 44, and argue that that case held that the introduction of the statements in the presence of the jury before such statements were used or identified, was not error. However, in that case the People introduced into evidence a statement made by defendants to which no objection was made. The court did not discuss the rules of evidence but merely stated that the statements made by the defendant prior to the trial were not offered

for any improper purpose, nor were they improperly referred to as a confession.

In the Chicago City Ry. Co. v. Gregory, 221 Ill 591, 77 NE 1112, the court cited and quoted from Scripps v. Reilly, 38 Mich 10, in which case the court said:

> "Everything having a tendency to prejudice or influence a jury in their deliberations which is not lawfully admissible in evidence on the trial of the cause should be, so far as possible, kept from coming to their knowledge during the trial. An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be or how carefully he may have been instructed by the court to not permit such incompetent matter to influence him or to have any bearing in the case, it will be difficult, if not impossible, for him to separate the competent from the incompetent, or to show to what extent his impressions or convictions may be attributed to that which properly should not have been permitted to come to his knowledge."

In Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216, the plaintiffs' attorney attempted to introduce a statement taken from Clark, the driver of one of the automobiles involved in the accident, in the presence of the jury. Out of the presence of the jury the court announced that it would sustain the objections to the exhibits and it was argued by the defendant that the attempt to introduce the statement in the presence of the jurors was prejudicial. The court said: "We agree with defendants that the conduct of plaintiffs' counsel made it appear that defendants were responsible for keeping Clark's statement from the jury, thus giving the impression that it was unfavorable, or the defendants would

not have objected to it." The court held that the defendants were deprived of a fair trial. In the case before us the ruling of the trial court that the request for the statement must be made in the presence of the jury was error.

It is unnecessary to dwell upon the many claims of defendant that he did not receive a fair trial because of the tactics of the State's Attorney and the rulings and comments of the trial judge during the trial. There were endless objections to the form of questions and to the answers made. There were countless interruptions and continual bickering. We hope that this will not be repeated when the case is retried.

The judgment of the Circuit Court of Cook County is reversed and the case is remanded.

Reversed and remanded.

DRUCKER, P. J. and ENGLISH, J., concur.