**People of the State of Illinois, Plaintiff-Appellee, v. Robert Jackson, Defendant-Appellant.**

**Gen. No. 52,087.**

First District, First Division.

October 27, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James B. Haddad, and Joel M. Flaum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Robert Jackson, was indicted for unlawful sale of narcotics. The jury trial resulted in a verdict and judgment of guilty. The defendant was sentenced to serve ten to thirty years in the penitentiary. No error is alleged in the indictment.

The defendant contends (1) that the prosecutor's comment that the testimony of the State's witness was uncontradicted violated the defendant's constitutional privilege against self-incrimination and (2) that the trial court unfairly restricted the defendant's cross-examination of its informer by:

> (a) refusing to require the addict-informer to show her arm to the jury, and

> (b) refusing to permit the defense to use the informer's past record in order to show bias.

We will briefly summarize the evidence. A narcotic addict-informer, Helen Stewart, who was on bond for a then pending charge, arranged for a "controlled sale" on January 10, 1966. That afternoon she met with Detective James Arnold. She was searched and given $25 in marked money. Detective Arnold then observed her talking with the defendant at 43rd and Calumet. The officer saw them go into a building. Miss Stewart returned shortly and handed the officer a package the contents of which, after a field test, were determined to be heroin. Miss Stewart said that she had given the defendant the twenty-five dollars for the heroin. The defendant was immediately arrested in a drugstore, where a search of his person revealed the ten dollar bill which had been given to the informer. Seven of the fifteen single dollar bills were found in the drugstore cash register. The other eight dollar bills were never recovered.

The defendant contends that his privilege against self-incrimination was violated when the prosecutor, in his closing argument, repeatedly referred to the fact that the State's case was uncontradicted. The prosecutor characterized Miss Stewart's testimony as uncontradicted and "She told you from the witness stand what happened and that is all that the evidence is." In regard to the meeting between the defendant and the informer and the fact that part of the money used was recovered from the defendant, he said, "Common sense, reasonableness, and the fact that all this is uncontradicted and unrebutted leads you to only one conclusion, that this defendant sold that heroin to Helen Stewart." Again, the prosecutor, in his final argument, said, "All we ask is that you put two and two together and from that you come to only one conclusion, the guilt of this defendant. Because that evidence is uncontradicted, it is unrebutted."

The alleged sale between the informer and the defendant took place while only the two were present out of the hearing of the police officer. The defendant argues

that, since he was the only person who could have contradicted the informer's testimony and he did not take the stand, to say that the informer's testimony was uncontradicted is to say that the defendant did not testify, and the comments thus violate his Fifth Amendment privilege. The defendant relies on Griffin v. California, 380 US 609, 85 S Ct 1229, in which it was held to be a denial of the Fifth Amendment protection for the prosecutor and the trial judge to comment on the defendant's failure to testify. The same argument made in the case at bar was made and rejected in People v. Mills, 40 Ill2d 4, 237 NE2d 697.

In Griffin the prosecutor made much of the defendant's failure to testify. The trial court instructed the jury that the failure of the defendant to explain or deny facts within his knowledge as to which there was evidence against him tended to indicate the truth of such evidence and that among the inferences which could be drawn therefrom the ones unfavorable to the defendant were more probable. The United States Supreme Court said that such comment "solemnizes the silence of the accused into evidence against him." 380 US 609, 614. The Fifth Amendment was held by the court to prohibit either comment by the prosecutor on the accused's silence or instructions to the jury that such silence is evidence of guilt.

After Griffin the Supreme Court of Illinois decided Mills. Although the facts of Mills raise a question of whether the defendant was the only one who could have contradicted the State's evidence, the court did uphold the propriety of a prosecutor's comment that the State's case was uncontradicted when only the defendant could contradict it. Griffin was distinguished by the court as being direct prosecutorial comment on the defendant's failure to testify. The court stated the test for such closing argument as being whether the reference was in-

tended to direct the attention of the jury to the defendant's failure to testify.

In this case the record reveals that no objection was made to the prosecutor's comments during the trial nor was this issue included in the post-trial motion. Normally, the issue would therefore be waived. However, we hold that the comments by the prosecutor in this case were not intended to focus on the defendant's silence so as to violate the Mills test. It would be a most unusual jury which would view these comments as a covert attack on the silence of the defendant rather than as an assertion that while the State's main witness had been attacked, her testimony was never contradicted by any evidence. We do not feel that these statements are the direct prosecutorial comments on the defendant's failure to testify necessary to bring a case under Griffin, particularly since the court instructed the jury that the defendant's silence raised no presumption or inference of guilt.

It is next contended that the trial judge unduly restricted the defendant's right to cross-examine by refusing to require the addict-informer to show her arms to the jury. The informer testified that she was a narcotics addict and had taken heroin for approximately fifteen years, the last time being in July, immediately before her present incarceration. She said that when she used narcotics she took it in her arm. The defense counsel then asked her to step down off the stand and show her arms to the jury. The prosecutor's objection was sustained.

In making this contention the defendant relies mainly on People v. Lewis, 25 Ill2d 396, 185 NE2d 168. In that case the informer admitted having been a user of narcotics by means of injecting the narcotics into his arm with a hypodermic needle, but he denied having taken any narcotics for about seven months before he testified. Counsel for the defense asked the witness to take off

his coat to exhibit his arm, and an objection was sustained. Since the witness had denied any recent use of narcotics, the Supreme Court held that any scars evidencing a recent use would cast doubt on his whole testimony.

In the case at bar, the witness testified on September 13, 1966, that she had been living in the House of Correction since July 27, 1966. The trial court stated that she had had no opportunity in the House of Correction to be subjected to inoculation of narcotics. Since she admitted that she was a user immediately prior to her incarceration and made no claim that she was a former addict who had given up the habit, no possible purpose could have been served by requiring her to display her arm to the jury. This is in contrast to the Lewis case which we find inapplicable on the facts. The latitude permitted in cross-examination of witnesses at trial is a matter within the discretion of the trial judge, and his rulings will not be upset on review unless there has been a plain abuse of discretion. We hold there was no such abuse in this case.

■ It is also contended that the trial court unfairly restricted cross-examination when it refused to permit the defense to use the informer's past arrest record in order to show bias. On direct examination the informer testified that she was incarcerated in the House of Correction and had been there since July 27th. She said she had been a narcotics addict for fifteen years. When she called the detective on January 10th to set up the "controlled sale" in the instant case, she then had pending against her a charge of possession of heroin. She stated with regard to her testimony that no promises were made to her by the police or the State's Attorney.

On cross-examination the defense counsel requested the police record of the witness. Defense counsel argued that the police record would have a bearing on whether the witness had worked with the police in prior arrests since she testified that she did not conspire with the

police in any prior arrests. The Court informed counsel that he could ask her those questions and that the police record showed no provable convictions. The defense counsel who apparently had a copy of the police record which he said showed 30 arrests for narcotics, argued this lends itself to some presumption that she was conspiring with the police or working with them. The Court suggested that he could tie it up and prove it. The records were marked as exhibits for identification. The Court sustained the objection to receiving the police records in evidence stating, "Insofar as the record is now, there is no foundation for it, but if the occasion arises where you have made a foundation then you may make the offer again."

The police record issue was never again raised. It is fair to presume that this is because during the extended cross-examination the witness admitted precisely what the defense had attempted to prove. The witness admitted taking heroin for 15 years, that she spent $75 a day for the narcotics, and that she obtained the money by being a prostitute. She admitted seeing the police officers often prior to this case and that she had previously been arrested on charges of possession of narcotics by the same officers. She also testified that she was presently being held on bond for possession of narcotics and that her case would come up for trial the next day. She said she was not offered any money for her testimony and denied that the police officers or the State's Attorney's office offered her leniency in her case if her testimony was good. She testified further that she had worked as an informer on two or three occasions in the past for other police officers. We hold that the refusal of the trial judge to permit proof of prior arrests before any foundation was laid was neither error nor prejudicial.

The cases cited by the defendant all involved cross-examination in which no inquiry about arrests or history

to show bias or prejudice was permitted despite a prior foundation. For example, in People v. Mason, 28 Ill2d 396, 192 NE2d 835, the narcotics inspector was asked whether he was recently suspended from the police force, whether he was a defendant in a criminal case recently, and what was his occupation. Objections were improperly sustained to these questions on the ground that the questions were immaterial and exceeded the scope of direct examination. In People v. Soto, 64 Ill App2d 94, 212 NE2d 353, an addict-informer was asked about his recent hold-over to the Grand Jury, his being an inmate of the County Jail at the time of trial, other charges pending against him, and his association and work with the police. To all of these questions objections were erroneously sustained. In contrast, the record indicates that the defense in the instant case was permitted the widest possible latitude to establish corruption, bias, and motive by the informer to testify falsely.

In addition to the testimony of the informer, we must note that there was also the corroborative testimony of the police officer and the evidence of the marked money on the person of the defendant. From an examination of the entire record, we find that the defendant was properly convicted of the crime charged. Accordingly, the judgment is affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.