(No. 5543-

SEBRON BEARD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 18, 1972.*

GLENN C. FOWLKES, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

BURKS, J.

For time unjustly served in prison, according to the complaint in this action, the claimant asks payment of damages from the State of Illinois pursuant to the provisions of Ch. 37, Sec. 439.8(c), Ill.Rev.Stat., 1971, which confers upon this Court exclusive jurisdiction to hear and determine:

(c) All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided, the court shall make no award in excess of the following amounts: for imprisonment of 5 years or less, not more than $15,000; for imprisonment of 14 years or less but over 5 years, not more than $30,000; for imprisonment of over 14 years, not more than $35,000; and provided further, the court shall fix attorney's fees not to exceed 25% of the award granted.

The claimant, Sebron Beard, was arrested in the City of Chicago on February 24, 1961, charged with and indicted for the murder of one Herbert Holmes.

The case was tried before a jury in the Criminal Court of Cook County. The jury rendered a verdict finding the defendent guilty. His motions for a mistrial, for a directed verdict, for a new trial, and in arrest of judgment were overruled by this trial court. Judgment was entered on the verdict and Beard was sentenced to a term of 50 years in the State penitentiary.

About 5 years later, on January 21, 1966, the Appellate Court of Illinois reversed the judgment of the Circuit Court of Cook County and remanded the case for a new trial. (*People* vs. *Beard,* 67 Ill.App.2d 83; 214 N.E. 2d 577).

The matter was again placed on the docket of the Criminal Division of the Circuit Court of Cook County for

trial. At the new trial the People did not present any evidence against Beard. No witnesses were called to testify. On Beard's motion, an order was entered by the Court discharging him on July 25, 1966.

From February 24, 1961, the date of his arrest, until July 25, 1966, the date of his final discharge, claimant spent a total of five years and five months in custody in the Illinois State Penitentiary and the Cook County Jail.

The key question before this Court is whether the claimant, Sebron Beard, has proved that he was innocent of the crime for which he was imprisoned. This Court has consistently held that Illinois Statute, cited above, makes it clear in plain language that such proof of innocence is a condition precedent to any recovery of damages under Illinois law.

This Court in *Jonnia Dirkans* vs. *State of Illinois*, 25 C.C.R. 343 (1965) was called upon for the first time to interpret the then comparatively new §439.8(c) in the Illinois Court Claims Act, which the Legislature had added to this Court's jurisdiction in 1958, the subsection under which this claim is brought. Our opinion in *Dirkans* dealt in depth with the intent and meaning of the said subsection and particularly with the words, "Where the persons imprisoned prove their innocence of the crime for which they were imprisoned". *Dirkans* held, inter alia, that said language, which is unique in the Illinois law, means that a claimant filing under this subsection must prove affirmatively in this Court, by a preponderance of the evidence, that claimant was innocent of the "fact" of the crime for which he was convicted.

To hold otherwise would distort the clearly expressed intent of the legislature and open the treasury of Illinois to a flood of claims that were never contemplated by this subsection (c).

Consistent with the *Dirkans* decision, supra, which has been cited and reaffirmed many times by this Court, we would merely add a principal of law that is long and well established in this state, namely, "Statutes in derogation of the common law must be strictly construed." *I.L.P. Statutes §176.*

To make a fair determination and judgment of the evidence submitted by the claimant to this Court as proof of innocence, it is necessary to review briefly the conflicting evidence submitted at the original trial.

Evidence in the trial court on behalf of the people was as follows: the decedent, Herbert Holmes, was employed part-time as a bartender at the Anchor Inn Tavern in Chicago. The proprietor of that establishment refused to serve defendant Beard further at about 10:30 or 11:00 p.m. on February 24, 1961. Beard left the premises and returned almost immediately. The decedent, Holmes, went up to Beard, talked with him for two or three minutes, then escorted him out of the tavern. Ten or fifteen minutes later a gun went off, and Holmes was dead. The People's key witness, Jearlean Rubio, testified that she had seen the two men "tussle" with each other in front of the Anchor Inn; that Beard pushed Holmes onto the hood of an automobile, and that Beard then came up with a gun. Mrs. Rubio turned her head away and then heard the gun go off three times. When she looked back, Beard was standing over Holmes and was holding the gun in his hand. Holmes staggered onto the street before collapsing and dying. The police arrived about fifteen minutes later, arrested the defendant, and charged him with murder. The police took a gun which the defendant was holding in his hand.

The defendant (claimant before this Court) took the stand in his own behalf and testified that when the decedent pushed him out of the door, the claimant asked

Holmes if he was crazy. Thereupon, Holmes kicked him. Beard started to grab him, and Holmes came up with this gun. The claimant then grabbed for the gun and the two men started tussling over it. During the struggle the gun went off, and Holmes toppled over dead.

The claimant Beard, also testified that the gun was not his, nor did he have it on his person prior to the tussle. By the testimony an issue was raised as to whether or not the gun belonged to the decedent and as to whether or not it was discharged while the defendant and the decedent were struggling for its possession.

In the Appellate Court, the claimant, Sebron Beard, successfully argued that many alleged errors were committed in the trial court; among others, that the court erred in admitting into evidence People's Exhibit One—a revolver; in restricting the cross-examination of the State's principal witness; in ruling that the defendant's request addressed to the Assistant State's Attorney for statements of witnesses taken before trial would be refused unless the request was made in the presence of the jury; and in preventing the defendant from having a fair trial because of the prejudicial conduct and remarks of both the trial judge and the Assistant State's Attorney.

The Appellate Court, after agreeing with several of Beard's specific charges of errors at his trial, concluded:

"It is unnecessary to dwell upon the many claims of defendant that he did not receive a fair trial because of the tactics of the State's Attorney and the rulings and comments of the trial judge during the trial. There were endless objections to the form of questions and to the answers made. There were countless interruptions and continual bickering. We hope that this will not be repeated when the case is retried. The judgment of the Circuit Court of Cook County is reversed and the case is remanded."

Apparently there was no bickering at the claimant's new trial in the Circuit Court of Cook County as the People offered no evidence against Beard and he was discharged. There is no explanation in the record as to why the State's key witness, Mrs. Jearlean Rubio, was not called by the State at Beard's second trial since her testimony had undoubtedly carried weight with the jury in securing claimant's original conviction. The record shows that Mrs. Rubio died in Chicago on August 7, 1968, nearly two years after Beard's second trial and shortly after he filed his case in the Court of Claims. Circumstantial evidence, supported by the record, suggests a motive and the probability that Mrs. Rubio gave perjured testimony at the claimant's original trial and, therefore, refused to appear at his second trial.

In claimant's presentation of his case before this Court, he called as a witness, Stonewall Barksdale who completely denied all of the statements made by the State's key witness, Jearlean Rubio, at Beard's first trial. Barksdale testified that he was in the company of the said Jearlean Rubio in The Budweiser Tavern across the street all the time while the fight between claimant and the decedent was going on; that they knew nothing of the matter until they heard the shots fired; that when they got out onto the street, Holmes had already been shot; that, contrary to Jearlean Rubio's testimony in the original trial, she had not seen the shooting or any part of it.

Barksdale's rebuttal of Jearlean Rubio's testimony in the trial court, while interesting, is by no means conclusive nor entirely relevant to the essential issue before this Court. Barksdale's testimony, which we accept for such probative value as it may have, merely impeaches the credibility of the State's key witness and supports the conclusion that Beard did not receive a fair trial in the Circuit Court. But that fact was established by the Appellate Court's order

reversing and remanding. In this Court, to sustain his claim for damages, it is incumbent upon the claimant to prove, by a preponderance of the evidence, that he is innocent of the crime for which he was imprisoned.

Confining ourselves to this issue and to the evidence submitted before this Court, we next consider a summary of claimant's own testimony at the hearing before this Court.

The Anchor Inn was located on the northwest corner of Madison and Hermitage Streets in Chicago. On the northeast corner was located the other tavern known as The Budweiser. Claimant testified that he had spent the evening of February 24, 1961, going from the one tavern to the other from 4:30 p.m. until approximately 10:00 p.m. At about 10:00 p.m., as claimant was leaving The Anchor Inn, the owner of the tavern told him "to get out; that he didn't want my business." As claimant was inquiring of him why he took this attitude, Herbert Holmes, the bartender, came up and struck claimant saying, "Get out of here. You heard what the man said. Get out of here. He don't want your business." Holmes then pushed claimant out the door of the tavern and closed the door. The door had a small glass pane in it and claimant tried to talk to Holmes through the glass. Holmes opened the door and kicked claimant. The two men started to fight with each other. While they were struggling, Holmes reached back and pulled a pistol out of his right hip pocket.

Claimant said, "When I went to grab him, he upped with his pistol. I grabbed him and we began tussling; we were going around and around. The gun went off two or three times; somehow, I don't know exactly how it happened, the gun twisted around and it went off and the bullet hit him in the shoulder and he began to weaken and he turned

the gun loose to me and fell. I did not get the gun in my hand until after he was shot."

"I do not know which hand the deceased used to pull out his pistol; I grabbed the first hand I seen; I never did turn that hand loose; I do not know if he shifted the pistol from one hand to the other; if he did, I don't know anything about it; I was holding onto the hand that had the pistol in it."

As respondent points out in its brief, the only person alive when the hearing was held before this Court who could testify as to whether Holmes was murdered, died accidentally, or was killed by the claimant in self defense, was the claimant. Naturally, as respondent contends, claimant's statement must be viewed as likely to be self-serving. But, self-serving or not, claimant's statement stands unimpeached before this Court. The respondent failed to offer any rebuttal testimony or any evidence of any kind before this Court. As stated in Gard, Illinois Evidence Manual, on page 661;

"Where testimony is uncontradicted and is not inherently improbable or otherwise self-impeaching it may not be disregarded."

To this Court the claimant also presented William Henry, Jr., an eye witness, who testified that while the struggle was going on he and his girl friend were sitting in the front seat of his car parked immediately east of the intersection on the north side of the street, facing west. They were parked in front of The Budweiser Tavern and looking towards The Anchor Inn. He stated that his view of the struggle was unobstructed and he was sufficiently close to the scene to watch it. He testified that the gun was at all times in Holmes' hand until after Holmes was shot.

The testimony of this eye witness also stands unimpeached before this Court except for his unswerving in-

sistence that the incident took place in the late afternoon rather than late at night. However, the witness Barksdale testified that there was ample light from a Budweiser sign and a street light so that a person "could see good". "You could see from one side of the street to the other", Barksdale said.

Respondent challenged the credibility of claimant's witnesses, William Henry, Jr. and Stonewall Barksdale, because neither of them had testified at the original trial of the claimant even though both of them were accessible at the time. Respondent contends that this Court, in the *Dirkans* case, announced the position that the production of a witness at a Court of Claims hearing who was accessible to the claimant at the criminal trial, but not called at that time to testify, so impairs that witness's credibility as to impeach him. We do not find that the *Dirkans* case went that far nor stated respondent's conclusion as an inflexible rule. These circumstances are merely factors which this Court will consider in assessing the credibility of witnesses, as we did in questioning the credibility of the State's key witness, Mrs. Rubio, who helped convict the claimant at his original trial but was not presented by the State at his second trial although she was accessible.

Finally, respondent states in its brief, "If Beard has raised a doubt as to whether he committed murder, it seems clear that he was guilty of manslaughter". This suggestion overlooks the plain language of the statute which states that the claimant must prove only that he is innocent of the crime *"for which he was imprisoned"*. That crime was murder, not manslaughter or some lesser crime of which he might well have been found guilty under the admitted facts in this case. Obviously we cannot apply a rule of strict construction to one part of the statute and place a liberal construction on another part of the same sentence.

It appears to us that, under the ordinary rules of evidence, claimant has made a prima facie case before this Court that he is innocent of murder, the crime for which he was imprisoned. He has done so by a preponderance of the evidence. We are obliged to acknowledge claimant's evidence as preponderant because his was the only evidence presented at the hearings before this Court.

We realize that the task of obtaining competent evidence concerning a crime committed more than five years earlier is often extremely difficult. In this case the respondent apparently found the task impossible, as did the State's Attorney of Cook County.

This Court takes no pleasure, under these circumstances, in granting an award for time "unjustly" served in prison when the admitted facts in this case would appear to justify a prison sentence had the claimant been charged with a lesser crime than that of murder. However, we must conclude that the time claimant served in prison for the crime of murder was time served for the wrong reason and was, therefore, technically, time unjustly served.

It is the judgment of this Court that claimant be awarded the sum of $7,500.00.