(No. 36631—

The People of the State of Illinois, Defendant in Error, *vs.* Prince Parson, Plaintiff in Error.

*Opinion filed March 22, 1963.*

H. Ernest Lafontant, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys

General, and EDWARD J. HLADIS and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Prince Parson, and Earl Carpenter were indicted for the crime of selling narcotics in violation of the Uniform Narcotic Drug Act. (Ill. Rev. Stat. 1961, chap. 38, par. 22.) The defendant was tried before the court without a jury, found guilty and sentenced to the penitentiary for a minimum of 10 and maximum of 12 years. The defendant here contends that he was not proved guilty beyond a reasonable doubt and that the court erred in admitting certain hearsay testimony.

On March 4, 1960, Federal narcotics agent William R. Jackson picked up an informer, Sam Neal, and drove to Joe's 600 Bar, arriving at approximately 5:15 P.M. They entered the bar, sat near the first booth and waited until 6:00 P.M. when the defendant Parson entered. Agent Jackson and the informer followed the defendant into the men's washroom. There the informer introduced Parson to Jackson, whose name was given as "Bennie," and whose official capacity was not disclosed. Parson stated to Jackson that he had pure heroin for sale at $120 a "spoon". Jackson stated that he would take one spoon and paid Parson $120 in recorded government funds. The defendant then told Jackson and the informer to wait in the tavern and that someone, whom the defendant did not name, would get in touch with them in about an hour. About 7:00 P.M. Earl Carpenter, who was a co-defendant at the trial, entered the tavern and nodded to Jackson and Neal, who then followed him outside. When they were outside, Carpenter stated simply "I'm ready" and he and Jackson walked to a nearby alley. There Carpenter recovered a brown paper package, later found to contain approximately one spoon of heroin, and handed it to Jackson. In response to Jackson's inquiry as to how he could get in touch with Carpenter to obtain

additional narcotics Carpenter stated "You don't see me, see Prince."

Narcotics agent Dennis Dayle testified that he was watching the tavern from across the street, that he had seen the defendant prior to this occasion, and knew of him. Dayle confirmed that the defendant arrived at approximately 6:00 P.M., left ten minutes later and that Carpenter, Jackson and Neal left the tavern at 7:00 P.M. Dayle also observed Carpenter hand the package to Jackson in the alley. Another agent, Daniel Connolly, who was also across the street, testified as to Parson's entering and leaving the tavern and as to certain of the events that occurred in the alley.

The defendant was arrested on August 2, 1960, by agent Dayle. Jackson, who did not know the defendant prior to March 4, observed him on several occasions thereafter and at the trial identified him as the person with whom he negotiated the transaction on March 4.

The defendant and Carpenter both denied any participation in the sale on March 4, 1960. The defendant testified that he had never seen Jackson at any time prior to the trial. He admitted that he had known Carpenter for two to three years previously and had seen him on occasions in Joe's tavern. The defendant's employer, a grocer, testified that the defendant ordinarily worked from 9:30 A.M. until 10:00 P.M., but stated that the defendant made deliveries and would be gone for as long as one hour at a time.

It is the defendant's contention that there was insufficient evidence connecting the delivery of the narcotics by Carpenter to the conversation and negotiation that took place in the washroom. Carpenter's statement that Jackson would have to see "Prince" for future purchases, being hearsay, should not, according to the defendant, have been admitted into evidence.

This statement was not objected to when it was first

related by Jackson on direct examination. Later when it was repeated on redirect the court reserved its ruling on the defendant's objection thereto. It does not appear from the record that defendant ever obtained a ruling from the court on this objection. Technically, therefore, the defendant is precluded on appeal from asserting any error due to the admissibility of this evidence.

Nevertheless, we feel that this statement, although made by Carpenter outside the defendant's presence, was admissible against the defendant. The defendant and Carpenter on this occasion were shown to have been jointly engaged in a conspiracy to sell narcotics: The defendant made the initial contact, agreed upon a price and set a time for delivery. At the time specified Carpenter appeared, said simply "I'm ready," and delivered the quantity of heroin agreed upon. These two men were obviously acting together in a common unlawful plan or scheme. (*People* v. *Looney,* 324 Ill. 375.) In such instances the declarations or admissions of one of the co-conspirators, made during the conspiracy, are admissible against the other. (*People* v. *Grilec,* 2 Ill.2d 538; Wigmore, Evidence, 3d ed., 1067.) This is true even though the conspiracy itself is not alleged in the indictment. In the present case the comment that Jackson would have to see "Prince" as to future purchases was made in the furtherance of the common illegal scheme and was, therefore, admissible.

The defendant also contends that because Jackson's testimony was not corroborated it was insufficient to sustain the finding of guilt, and that the State's failure to call the informer, and to arrest the defendant promptly, tended to discredit Jackson's testimony.

We have repeatedly held that the testimony of a single witness, if positive and credible, is sufficient to convict even though contradicted by the defendant. (*People* v. *Guido,* 25 Ill.2d 204.) Agent Jackson was with the defendant at

the time of negotiating the sale for approximately ten minutes and his testimony was positive and unshaken. Certain portions of his testimony were corroborated by agents Dayle and Connolly. The trial court apparently believed these witnesses rather than the defendant, and there is nothing in the record that would indicate that the trial court's determination should be set aside.

The State was under no obligation to call the informer as its witness. This witness was available and was being held in custody in connection with another case. The defendant refused an offer by the court to call the informer as the court's witness and. cannot, therefore, now complain that he did not testify.

The fact that several months elapsed from the commission of the crime to the date of the arrest is not unusual in a narcotics case since such delays are often aimed at discovering suppliers at higher levels. (*People* v. *Guido,* 25 Ill.2d 204.) The delay in this case from March 4 to August 2, during which time the defendant was kept under observation, in no way discredits Jackson's testimony.

The defendant was, in our opinion, proved to have been guilty beyond a reasonable doubt. The testimony of Jackson was positive and unequivocal. The defendant negotiated the transaction and received the money. Carpenter delivered the quantity of heroin specified at the time specified. The defendant admitted that he had known Carpenter for two to three years and had seen him in Joe's tavern on occasions. Carpenter told agent Jackson that he would have to see the defendant for future purchases. These two individuals were clearly shown to have been acting in concert in consummating the sale to agent Jackson. The admission into evidence of the statement made by Carpenter that future purchases would have to be negotiated through "Prince" was not error. The judgment of the criminal court of Cook County is, therefore, affirmed.

*Judgment affirmed.*