THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARK MUELLNER, Defendant-Appellant.

Fifth District   No. 77-311

Opinion filed March 21, 1979.

Gomric & Strellis, of Belleville, and James J. Knappenberger, of Shaw, Howlett & Schwartz, of Clayton, Missouri, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Mark Muellner, was convicted by jury in the Circuit Court of Madison County of two counts of rape and two counts of deviate sexual assault. Following a hearing in aggravation and mitigation, defendant was sentenced to concurrent terms of 4 to 8 years imprisonment; however, 11 days after sentence was imposed, the trial court altered the sentence, upon the State's motion, so as to cause the sentences imposed for rape to run consecutively to those imposed for deviate sexual assault. Defendant appeals from his conviction of all offenses and the sentences imposed thereon.

The charges against defendant arose out of events occurring on August 7, 1976, in Madison County during which it was alleged that defendant, co-defendants Donald Jenkins and Richard Knowles, and others committed numerous acts of rape and deviate sexual assault upon two young women, 18 years of age. The cause was originally tried before a jury in February 1977, but ended in a mistrial when the jury could not agree on a verdict. The record discloses that prior to the commencement of the second trial various pretrial motions were considered by the court in chambers. Defense counsel moved for a change of venue or a continuance because of a newspaper article which appeared in the Alton Telegraph on April 21, 1977, containing various comments concerning the prosecutors' attitudes toward rape cases and featuring a picture of one of the prosecutors. The newspaper article also referred to the fact that

the alleged victims had submitted to lie detector tests some time after the incidents. The court denied the motions and that ruling is not challenged by defendant in this appeal.

The court also granted the State's seven-paragraph motion in limine except for paragraph 6. In paragraph 7, which was granted, it was requested that the court exclude any reference to certain record albums purchased by the alleged victims on the evening of August 6, 1976, a matter which the court in the previous trial had ruled irrelevant. It was agreed by the court and counsel that defendant's offer of proof at the first trial pertaining to the purchases be incorporated by reference into the record of this cause. Defendant's offer of proof indicated that his counsel wished to question the alleged victims about two record albums purchased by one of the girls in which he charged there were contained various sexually oriented words and references to drug paraphernalia. As part of the offer of proof, defense counsel cross-examined one of the victims concerning her activities on the night in question, her purchase of the record albums, and her state of mind at the time of the incident. Defense counsel argued that the subject matter and titles of the albums indicated her state of mind at the time she first encountered the men. The offer of proof was denied.

When trial commenced on April 25, 1977, the State called Mary Gavin, a registered nurse at St. Elizabeth's Hospital in Granite City, as its first witness. Gavin testified that the girls had undergone physical and vaginal examinations on the morning of August 7, 1976, and she identified several slides made that morning as well as various items of clothing taken from the girls. She could not recall observing any indication of physical injuries other than in the vaginal area. Another nurse, Connie Pilat, testified to basically the same matters, specifically her assistance during one victim's physical examination. Doctor Joseph Kopp testified that he examined the test slides of both women and found the presence of sperm on each of their vaginal smears, but not on the smears taken from their oral or rectal cavities. Steven Martin, a medical lab technician at St. Elizabeth's Hospital, testified that he performed certain tests on several of the slides which contained specimens from various parts of the womens' bodies.

Sergeant Glen Newsome of the Madison County Sheriff's Office testified that he came into contact with the women at approximately 4:40 a.m. on August 7, 1976. He stated that after taking them to St. Elizabeth's Hospital, he returned with the women and other police officers to the scene of the incident. Newsome also identified various pictures, diagrams, and items of evidence he found at the scene.

The victims testified that on the evening of August 6, 1976, they went shopping. One of the girls, who had approximately $50 in her purse,

purchased two record albums. While the victims were driving down a Missouri highway later that evening an automobile containing nine or 10 males passed them. Shortly thereafter, they passed this car before stopping at a service station to use the restroom. When the women pulled into the service station, the automobile containing the men pulled up alongside their car and the men asked the women if they wanted to go to a party; the women responded negatively. According to one of the victims, two of the men, Richard Knowles and a man identified only as Zack, then entered the automobile over her protests. The two men told the women to drive to a nearby park to meet the other men and they complied with their request.

After driving to the park and returning to the station twice, the driver stopped at another service station where she purchased gasoline. Thereafter, she followed the automobile occupied by the remaining members of the group to a tavern which Knowles entered and then returned to her car. She explained that she didn't know what would have happened to her if she had refused to continue driving and that she was worried and concerned. After the stop at the tavern, she proceeded to follow the other auto to another service station where the girls used the restroom while the man named Zack stood outside the door. The three returned to the automobile and followed the other car over the Mississippi River into Madison County, Illinois. After driving a short distance, the automobiles stopped along the side of a road at a location known as Chouteau Island, and the driver was thereupon instructed by defendant Muellner, who had been in the other automobile, to drive her car down a hill. When she refused, defendant pushed her aside in the seat and drove her auto down the hill.

At that point, the driver related that Zack, Knowles and the defendant dragged her across the ground to a location where they subsequently forced her to have sexual relations with them. At the same time, she observed the other girl being dragged in an opposite direction to another point. She stated that with at least five of the men participating she was ultimately forced to engage in 14 or 15 acts of "normal" intercourse, all without her consent. She specifically testified that defendant forced her to have intercourse with him. After approximately 4½ hours, she and the other victim were allowed to leave, but were first warned by the men not to tell anyone about the incident. Before leaving the scene, she discovered that her wallet was missing and she later discovered that the contents of her automobile trunk, including the record albums had been removed. The girls then drove to West Florissant, Missouri, where they were stopped by a police officer whom they informed of the incident.

On cross-examination, she stated that she was not physically forced

to follow the automobile with the other men in it on the night in question, nor did she try to escape or seek any assistance at any time preceding the incident although she had the opportunity to do so. She explained that she cooperated with the mens' demands that evening because she was unsure of what would have happened had she not. She also testified that during the drive into Illinois Knowles repeatedly grabbed at her, but that she hit him and refused his advances. She admitted that during their trip back to Missouri after the incident, she passed by several traveler's aid call boxes along the highway as well as one of the service stations at which they had stopped earlier that evening. She also related that their contact with the police after the incident was initiated by her being stopped for speeding. Defense counsel at one point confronted her with a statement she had given to Sergeant Newsome a few days after the incident in which she had said that three men had initially gotten into her car that evening, although she again stated that only two men had done so as she had testified on direct examination.

The other victim testified that shortly after arriving at Chouteau Island she was dragged from the automobile and knocked to the ground by Donald Jenkins. He asked her to undo her belt which she refused at first, but did so after he slapped her. Jenkins and several others at that point forced her to have sexual intercourse with them and to submit to acts of oral sex as well. She related that she was forced to lick one man's rectum twice and after she started shaking and telling them she was going to be sick, she was put back into the automobile where she was joined in the back seat by defendant Muellner and another man. She stated that Muellner forced her to have anal sex with him while in the automobile. After an unspecified period of time, the man left the automobile and the women were allowed to dress and drive away. Before leaving, one of the men remarked that they were "getting off easy." She described her companion as being hysterical during their trip back to Missouri.

Under cross-examination she testified that she had been worried and concerned about the presence of the men before the group reached Chouteau Island and that she was afraid that they might be "ripped off." She did admit that she had at one point earlier in the evening left and reentered the automobile voluntarily.

The defense called Sergeant Newsome as a witness and he testified that shortly after the incident he took a statement from one victim. In that statement, she indicated that she had been forced back into the automobile after stopping at the first service station where the men first spoke with the women and entered the car; that she was struck by one of the intruders; and that three men had entered the automobile. On cross-examination, Newsome described her as being very excited and bordering on hysteria at the time she gave him her statement. No further

evidence was presented on behalf of the defendants and after closing arguments the jury found the defendant, and his co-defendants, guilty on all counts.

On June 2, 1977, defendant appeared before the court for sentencing. Prior to the imposition of sentence, defense counsel made an oral post-trial motion to which the State objected and requested that defendant be required to file a written post-trial motion so that the State could enter an adequate response. The court stated that it had reviewed its trial notes and the evidence in the cause and denied defendant's motion for a new trial. The court then proceeded to defendant's hearing in aggravation and mitigation during which the State presented no evidence. After hearing evidence in mitigation on behalf of defendant, the trial court sentenced him to concurrent terms of 4 to 8 years on all counts. After sentence had been imposed, defense counsel made an oral motion that the court reporter be directed to file a notice of appeal for defendant. On June 6, 1977, the State filed a motion for rehearing which was argued and allowed on June 8; although, the court noted that defendant had filed a notice of appeal from the judgment and sentences thereon on June 7. The rehearing was held on June 13, during which the State requested that the court re-examine the sentences imposed on June 2, and modify them so that the sentences on the rape convictions and deviate sexual assault convictions would run consecutively and not concurrently. Defendant objected to the requested modification and argued that the State should have made its arguments and presented aggravating evidence at the first hearing on June 2. At the conclusion of the hearing the court ordered that the sentences previously pronounced would be altered so that sentences imposed on the rape counts would run consecutively to those imposed on the deviate sexual assault counts.

On appeal, defendant raised several issues: (1) whether the trial court improperly restricted and limited cross-examination by the defendant; (2) whether the conduct and statements of the prosecutors during trial were so prejudicial and inflammatory as to deny defendant a fair trial; (3) whether the trial court erred in refusing to grant defendant's motion for severance and in submitting an instruction to the jury on accountability for conduct of others; (4) whether the trial court improperly allowed certain testimony by the alleged victims of the offense; (5) whether the evidence adduced at trial was sufficient to prove defendant guilty of the charges beyond a reasonable doubt; and (6) whether the court's modification of defendant's original sentence upon the State's motion was error.

■■ In response to the first five issues raised by defendant in this appeal, the State argues that because these contentions were not presented to the trial court in a written post-trial motion as required by statute they are

waived. Section 116—1(b) of our Code of Criminal Procedure of 1963 requires a defendant to file a written post-trial motion within 30 days of the return of the verdict. (Ill. Rev. Stat. 1975, ch. 38, par. 116—1(b).) Although an oral motion will suffice if the State does not object, the requirement that it be in writing is mandatory if the State insists upon it. (*People v. Whitehead*, 35 Ill. 2d 501, 221 N.E.2d 256 (1966); *People v. Flynn*, 8 Ill. 2d 116, 133 N.E.2d 257 (1956).) Thus, where insisted upon by the State, issues not raised in a written post-trial motion are waived for purposes of appeal (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856 (1973)); and the failure to file any post-trial motion constitutes waiver of all errors raised on appeal. (*People v. Hammond*, 48 Ill. App. 3d 707, 362 N.E.2d 1361 (5th Dist. 1977).) However, a reviewing court may take notice of plain errors affecting substantial rights under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)), and may take notice of defects in a criminal trial where the evidence is closely balanced, although it is not mandated to do so. *People v. Pickett.*

In the instant cause, we are not convinced that defendant was required to file a written post-trial motion to preserve his claims of error despite the State's objection to his oral post-trial motion. The record discloses that the State's objection to defendant's oral motion was not entered until after defense counsel's rather lengthy argument in support of the motion was completed, which the court accepted and ruled on. When this fact is viewed in light of this court's decision in *People v. Hammond*, 48 Ill. App. 3d 707, 362 N.E.2d 1361 (1977), the question arises whether the arguments raised, although oral, are nevertheless waived. In this regard, we are unsure whether the State's objection or insistence that the motion be in writing is effective if made after defendant's motion is made and completed. Nevertheless, after carefully examining the instant record, we are of the opinion that the defendant's claims of error concerning these issues are nonmeritorious. We will address the merits of these contentions.

■■■ Defendant initially argues that the trial court committed prejudicial error by numerous rulings limiting defendant's scope of cross-examination and refusing offers of proof. Defendant correctly asserts that the widest latitude should be allowed an accused in cross-examination for purposes of establishing bias, motive, prejudice or interest on the part of a witness. (*People v. Barr*, 51 Ill. 2d 50, 280 N.E.2d 708 (1972); *People v. Soto*, 64 Ill. App. 2d 94, 212 N.E.2d 353 (1st Dist. 1965).) In addition, due process requires a fair opportunity to defend against the State's accusations, thus the right to confront and cross-examine witnesses is essential and any limitations on such rights, although proper in certain instances, require close examination. (*Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973).) Nevertheless, the scope of

cross-examination is committed to the sound discretion of the trial judge whose decision will not be reversed except in a case of a clear abuse of discretion. (*People v. Ciconte*, 32 Ill. App. 3d 374, 336 N.E.2d 260 (1st Dist. 1975).) Applying this principle to the case at bar and the particular inquiries in question, we find no abuse of discretion by the trial court. Defendant was free to call the State's witnesses as his own to pursue the matters that were ruled beyond the scope of direct examination, but he failed to do so. He did call Sergeant Newsome as his own witness, but he neglected to propound the questions he now alleges he was improperly prohibited from asking him on cross-examination. After examining the record in this cause, we are of the opinion that defendant was given broad latitude in his cross-examination of the witnesses, especially the alleged victims, and that any errors or deficiencies which may have occurred were harmless and could not have affected the verdict of the jury.

Many of the questions asked on cross-examination had no basis in the record, were highly prejudicial and in no instance did defendant make an offer of proof that he had any evidence of a positive nature to support the substance of the examination. Defendant admits that the cross-examination was purely exploratory and that he could not state to the court what facts he reasonably hoped to develop. For instance, counsel was prohibited from asking the medical laboratory technician if he found any female lubricant in the vagina of one of the victims. He acknowledged that he had no evidence to support the suggestion thereby made. Such cross-examination is highly improper. It not only exceeded the scope of the direct examination, but contained the unfounded innuendo that such lubricants might be present. *People v. Nuccio*, 43 Ill. 2d 375, 253 N.E.2d 353 (1969); *People v. Burbank*, 53 Ill. 2d 261, 291 N.E.2d 161 (1972); see ABA Standards, The Defense Function §7.6(d) (1974).

Defendant also complains that certain questions and remarks made by the prosecutors during trial were inflammatory and prejudicial and resulted in denying him a fair trial. In one instance, the State called a certain witness to the stand who never appeared nor was his absence explained. Defendant now argues that this resulted in prejudice to him although he does not explain why. More importantly, we note that when the witness could not be found immediately, defense counsel related to the prosecutors and the court that the witness was in the hallway outside the courtroom. While we are mindful that each party is responsible for securing the attendance of its own witnesses, we do not believe that this witness' absence, nor the remarks concerning his whereabouts, were prejudicial to defendant. Moreover, after examining all of the challenged statements and questions by the prosecutors, we can find only two instances where their conduct was improper. At one point during the State's direct examination of one of the alleged victims, the prosecutor

remarked that her crying and loss of composure on the witness stand was "not our fault." At one other juncture during redirect examination of one of the women, the prosecutor asked her if any of the traveler's aid call boxes along the highway had a "just been raped" button on them, in apparent response to defense counsel's inquiry as to why the women had not used a call box to report the incident to the police immediately. We are of course mindful that substantial and repeated prejudicial remarks and insinuations, made over defense objections which are sustained, cannot be condoned and deny defendant a fair trial. (*People v. Patterson*, 44 Ill. App. 3d 894, 358 N.E.2d 1164 (1st Dist. 1976).) However, we do not believe that the instant remarks, while unnecessary and improper, were so prejudicial as to result in an unfair trial, as defendant now argues. We are of the opinion that these errors, even when taken cumulatively, had no bearing on the outcome of the trial and do not, therefore, require reversal.

Defendant next asserts that he was prejudiced by the trial court's denial of his motion for a severance and by the victims' narrations of certain acts and utterances of his accomplices. Defendant also complains that the court erred in instructing the jury that he and his co-defendants could be held responsible for the acts of the other men in the group when the number of these acts was not clearly ascertained and where it was not shown that any of the men had any control or dominion over another. The State responds that defendant's assertions rest on a misconstruction of the law pertaining to accountability.

■■ Generally, where defenses are antagonistic, a severance should be granted (*People v. Strayhorn*, 35 Ill. 2d 41, 219 N.E.2d 517 (1965)); however, to obtain a severance, a defendant must show how a joint trial would prejudice him. (*People v. Ross*, 41 Ill. 2d 445, 244 N.E.2d 608 (1968).) The instant defendant does not explain how his position was antagonistic to that of his co-defendants except to assert that various utterances made by members of the group were testified to by the alleged victims. We do not think that any of these statements were introduced to prove the truth of the matter asserted therein, rather the testimony regarding these statements was just part of the victims' narrations of the incident. Moreover, under principles of accountability, where two or more persons have a common design to accomplish an unlawful purpose, the act of one is the act of all and all are equally guilty of whatever crime is committed. (*People v. Nowak*, 45 Ill. 2d 158, 258 N.E.2d 313 (1970).) The evidence adduced in the case at bar established that defendant pushed the driver aside in the front seat of her automobile and drove her and the other victim to the scene of the incident; that he dragged the driver away from her car and raped her; and that he forced the other girl to have anal intercourse with him. The evidence clearly showed that defendant was a willing and active participant in a gang rape such that he

was responsible for the conduct of his accomplices. In this regard, we are of the opinion that just as the acts and declarations of conspirators while in the furtherance of a common objective to commit a crime are admissible against other conspirators even though conspiracy itself is not alleged in the indictment (*People v. Parson*, 27 Ill. 2d 263, 189 N.E.2d 311 (1963); *People v. Thomas*, 38 Ill. App. 3d 689, 348 N.E.2d 285 (3d Dist. 1976)), so too are the statements and declarations of persons accountable for another's conduct admissible against the other persons accountable when there is ample independent evidence of common design and concerted criminal activity.

Defendant also argues that the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt of the offenses charged. Specifically, defendant asserts that the jury might reasonably have doubted the alleged victims' testimony and also complains that no evidence was introduced showing his direct participation in certain of the acts alleged.

■■■ Defendant contends that the victims' testimony regarding periods of casual conversation with him, their lack of any resistance to the acts and failure to attempt to escape should have precluded a finding of guilt. We disagree. We are mindful of the special duty of a reviewing court to scrutinize closely the sum and substance of the evidence upon which a conviction for sex offenses is predicated; however, such a conviction will not be reversed unless the evidence, on the whole, is so improbable or insufficient as to raise a reasonable doubt of defendant's guilt. Contrary to defendant's argument, we find the testimony of the complainants clear and convincing and sufficient to prove defendant guilty of rape and deviate sexual assault beyond a reasonable doubt. The two victims substantially agreed in all particulars of their testimony which tended to show that defendant and eight other men detained them for 4½ hours on Chouteau Island and forced them to perform a multitude of sexual acts without their consent. Both victims positively identified defendant as one of their assailants and their testimony was corroborated by laboratory evidence, prompt complaint, and by the discovery of various personal effects at the scene the next morning. While the evidence shows only slight resistance by the women, the law does not require the victim of a rape to resist where resistance would be futile and would endanger her life or where she is overcome by superior strength or paralyzed by fear. *People v. Smith*, 32 Ill. 2d 88, 203 N.E.2d 879 (1965).

■■ Defendant's complaint that no evidence was introduced to show his direct participation in certain of the acts charged, specifically the rape of one victim or the deviate sexual assault of the other victim is without merit when viewed under the rule of accountability as earlier stated. When a group evinces a common design to do an unlawful act and all

assent, whatever is done in furtherance of that design is considered the act of all. (*People v. Dickens*, 19 Ill. App. 3d 419, 311 N.E.2d 705 (5th Dist. 1974).) It is not essential that an accused's participation in each element of the crime be established, only that he aided, abetted or assisted in the commission of the crime. (*People v. Cole*, 30 Ill. 2d 375, 196 N.E.2d 691 (1964).) It is our opinion that the evidence is sufficient to support a finding that a gang of young men formed a common design to rape and commit deviate sexual assaults on the women and that defendant was a willing and active participant.

Defendant finally contends that the trial court's alteration of his original sentence upon the State's motion was improper. Defendant alleges that the court's imposition of his first sentence on June 2, 1977, was a final and appealable order and that his resentencing on June 13, 1977, violated statutory provisions regarding a trial court's control over its judgment as well as constitutional provisions against double jeopardy. The State responds that the trial court's resentencing of defendant was a proper exercise of its inherent authority to modify its judgment and sentence within 30 days after entry.

Both defendant and the State cite *People v. Heil*, 71 Ill. 2d 458, 376 N.E.2d 1002 (1978), in support of their positions; however, defendant's reliance is placed upon this court's decision in *People v. Heil*, 49 Ill. App. 3d 55, 364 N.E.2d 966 (1977), which was reversed by the supreme court. In *Heil*, our supreme court ruled that the trial court, after allowance of defendant's petition for discharge based on his statutory right to a speedy trial, did not err in considering the State's motion to set aside and expunge the order, which motion was filed within 30 days of the entry of the order, notwithstanding the fact that the order of discharge had been entirely executed. In so holding, *Heil* noted that numerous statutes, rules and cases demonstrated the intent that the trial court is to be given the opportunity to reconsider final appealable judgments and orders, in criminal as well as civil matters, within 30 days of their entry. The court stated in pertinent part:

> "We find nothing in these cases which would support the contention that a party entitled to appeal from an order entered by the circuit court should be deprived of the opportunity to seek correction of the alleged error by means of a motion timely filed in the circuit court." (71 Ill. 2d 458, 461-62, 376 N.E.2d 1002, 1003.)

The State argues that the circuit court's inherent authority to modify its judgment, as confirmed in *Heil*, was held to extend to sentencing in *People v. Gulley*, 411 Ill. 228, 103 N.E.2d 650 (1952) and *People v. Castile*, 34 Ill. App. 3d 220, 339 N.E.2d 366 (5th Dist. 1975), and, therefore, the

trial court's modification of the instant defendant's sentence within 30 days of its original imposition was not error. We disagree.

Although both *Gulley* and *Castile* involved issues concerning the propriety of a trial court's alteration of its original sentence, neither case involved the question presented in the instant cause. In *Gulley*, the defendant was sentenced to a term of 1 to 5 years imprisonment. The sentence was vacated three days later upon defendant's motion and he was placed on probation. After defendant's probation was subsequently revoked, he was sentenced to a term of from 1 year to life and his argument on appeal that the trial court had erred in sentencing him to a longer term than originally imposed was rejected. In *Castile*, the trial court initially sentenced defendant to a term of 3 to 8 years imprisonment, but immediately corrected the sentence to 3 to 9 years so that it would conform to the statutory requirement that the minimum term not be greater than one-third the maximum. In reviewing the trial court's action, we found nothing improper with either the sentence ultimately imposed or the procedure employed in arriving at such sentence.

Section 5—8—1(d) of the Unified Code of Corrections provides that a court may, within 30 days from the date on which sentence is imposed, "* * * reduce or modify, but shall not increase the length of a sentence * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(d).) This section is derived in part from the American Bar Association sentencing standards (see Ill. Ann. Stat., ch. 38, par. 1005—8—1(d), Council Commentary, at 482 (Smith-Hurd 1973)) which provides that under no circumstances should the trial court be authorized to increase a term of imprisonment once it has been imposed (A.B.A. Standards, Sentencing Alternatives and Procedures §6.1(b) (1974)). We are aware that the opposite conclusion was reached in the recent case of *People v. Hills* (1979), 71 Ill. App. 3d 461, 389 N.E.2d 873, in construing section 5—8—1(d) of the Code. We adopt the reasoning of the dissenting opinion that the statute means precisely what it says; namely, the trial court may within 30 days reduce the sentence imposed but may not increase the sentence.

We are unpersuaded by the State's contention that the instant defendant's sentence was not increased, but merely modified by the trial court. It is our opinion that the resentencing of defendant to consecutive terms after originally imposing concurrent sentences was in the very real sense an increase in the length of his sentence because his earliest possible parole release will necessarily be delayed to a later date in time.

■■ While we agree with the State that consecutive sentences could have properly been imposed by the trial court in this cause, we do not agree that the State could cause the court to reconsider and increase its original

sentence by presenting arguments and aggravating evidence for a more severe term where it failed to do so in the first instance. We believe that by standing mute at defendant's first sentencing hearing it was foreclosed from seeking and obtaining a second chance to persuade the court as to the "manner and severity of defendant's deposition." Accordingly, we vacate the defendant's second sentence and reinstate the sentence originally imposed on June 2, 1977.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is modified to the extent that the sentences imposed shall be served concurrently and as so modified the judgments of conviction are affirmed.

Affirmed as modified.

JONES and KUNCE, JJ., concur.