THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* FREDERICK DERRY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-884

Opinion filed June 26, 1979.—Rehearing denied July 31, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Kenneth J. Good, of Goldstein, Aiossa & Good, of Chicago (Douglas K. Morrison, of counsel), for appellees.

Mr. JUSTICE PERLIN delivered the opinion of the court:

The State appeals an order of the circuit court of Cook County which sustained a motion to quash a search warrant and to suppress evidence seized pursuant thereto. The sole issue for review is whether the trial court erred in quashing the search warrant based on its finding that the affidavit in support of the warrant was not sufficient to establish the informant's reliability.

We reverse.

On August 4, 1977, Stephen J. Miller, an agent of the Illinois Department of Law Enforcement, filed a complaint for a search warrant for the person of "Thomas Dault aka TOM" and the premises at 4623 Kenilworth, Apartment 306, Rolling Meadows, Illinois. His affidavit in support of the warrant provided as follows:

"On 8-3-77 at approximately 9 a.m. a confidential source of the Buffalo Grove Police Department, known as Joe Sly, did proceed to apartment 306 located at 4623 Kenilworth, Rolling Meadows, IL and did purchase, as an agent of the Buffalo Grove Police Department, approximately 45 small white double scored tablets for $12.50 U.S.C. from a subject known to the confidential source as Tom LNU who occupies said apartment. Tom LNU purported the said tablets to be amphetamine. Tom LNU stated to Sly that he

(Tom) would be able to supply 10,000 identical tablets on 8-4-77. Tom LNU provided Sly with telephone number 394-8174 to enable Sly to contact him (Tom) for setting up another drug transaction. The 45 small tablets were delivered by Joe Sly to Officer Robert Quid, Buffalo Grove Police Department, who designated the said tablets exhibit 1. Quid performed a field drug test (Narcotics Identification System) on a sample of exhibit 1. The test was positive for amphetamine.

On 8-4-77 at approximately 9 a.m. Agent Miller, Illinois Department of Law Enforcement, established through the Illinois Bell Telephone Company (796-9600) that telephone #394-8174 is registered to Thomas Dault, 4623 Kenilworth, Rolling Meadows, IL.

On 8-4-77 at approximately 12:30 p.m. Joe Sly contacted Tom LNU at #394-8174 and confirmed that Tom LNU would have in his possession within his apartment at approximately 3:30 p.m. approximately 10,000 tablets of amphetamine which he would sell to Sly for .15¢ per tablet. On 8-4-77 at approximately 3:45 p.m. Joe Sly, acting as an agent of the Illinois Department of Law Enforcement, the Buffalo Grove Police Department and Arlington Heights Police Department, did contact Tom LNU at #394-8174 in the presence of Agent Bertulis, Illinois Department of Law Enforcement. Tom LNU advised Sly that he (Tom) had received the shipment of 10,000 amphetamine and that the said quantity of drugs was in his possession within the above described apartment. Sly agreed to be at the said apartment at approximately 4:30 p.m. to purchase 1,000 tablets for $150.00 U.S.C.

On 8-4-77 at approximately 4:50 p.m., Joe Sly proceeded to said apartment after being strip-searched by Agent Miller and Bertulis. Sly had been furnished $150.00 U.S.C., prerecorded funds to make the purchase of 1,000 tablets. Sly was under surveillance by Agents of the Illinois Department of Law Enforcement and Officers of the above mentioned Police Departments before entering and after exiting said apartment. Sly returned to the company of Agent Miller and surrendered exhibit 2., one brown plastic bottle with white cap containing a quantity of approximately 1,000 white double scored tablets purported to be amphetamine. Sly reported the tablets had been purchased from Tom LNU in Apt. 306 located at 4623 Kenilworth, Rolling Meadows, Il. The purchase was made for $100.00 U.S.A. pre-recorded money serial numbers $50.00 Serial #H 02105561A, $20 Serial #B 13884500B, $20 Serial #L 39699767C, $10 Serial #G 792915641D. Sly reported that while in the said

apartment he observed a quantity of crushed green plant material purported to be marijuana and weigh scales in plain open view on a picnic located in the dining room.

Tom LNU advised Sly that he had in his possession within the apartment an additional 9,000 tablets and to call as soon as possible to arrange the second state of the drug transaction which was to occur in a time limit of 2 hours.

Based on above facts and circumstances, Agent Stephen Miller now appears before Judge Fiala and requests a search warrant be issued to search 4623 Kenilworth, Apt. #306, Rolling Meadows, Illinois."

Based on the affidavit, a warrant was issued to search Thomas Dault and the apartment. Following a search by police pursuant to the warrant, defendant Thomas Dault was arrested and charged with two counts of possession of cannabis (Ill. Rev. Stat. 1975, ch. 56½, pars. 704(d) and 704(e)), four counts of possession of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, pars. 1401(c), 1402(a) and 1402(b)), and unlawful possession of a firearm (Ill. Rev. Stat. 1975, ch. 38, par. 83—2(a)). Defendant, Frederick Derry, who according to the record on appeal also resided at the apartment in question, was arrested and charged with two counts of possession of cannabis and three counts of possession of a controlled substance.

On September 9, 1977, defendants filed a motion to quash the search warrant and suppress any evidence seized at the apartment. The trial court sustained defendants' motion based on its finding that the affidavit in support of the warrant contained no information to establish the reliability of the informant.

The State contends that the trial court erred in quashing the search warrant because the affidavit contained sufficient corroborating facts which established the informant's reliability. The State cites the following allegations as corroboration of the informant's information:

(1) On August 4, 1977, agent Miller verified through the Illinois Bell Telephone Company that the number supplied by the informant was registered to Thomas Dault at apartment 306, 4623 Kenilworth, Rolling Meadows, Illinois;

(2) At 3:45 p.m. on August 4, 1977, the informant, in the presence of an agent of the Illinois Department of Law Enforcement, telephoned someone named "Tom" at the above mentioned apartment and was told that he could purchase 1000 amphetamine tablets at 4:30 p.m. that day at the said apartment; and

(3) At approximately 4:50 p.m. the informant was strip-searched by police and he and the affiant then proceeded to the said apartment possessing $150 in pre-recorded bills. The informant

was under continuous surveillance by affiant before entering and after exiting the apartment. After informant returned from the apartment he surrendered to affiant 1000 white tablets purporting to be amphetamines, which informant claimed to have purchased in the apartment.

■■■ In *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509, the United States Supreme Court announced the criteria for determining the sufficiency of an affidavit for a search warrant which is based on hearsay information supplied by an undisclosed informant. The affidavit must contain (1) some of the underlying facts or circumstances upon which the informant's conclusions are based; and (2) some of the underlying facts from which the affiant concluded that the informant was credible and his information reliable. It is established that affidavits for search warrants should be tested in a "common sense and realistic fashion." (*People v. Philyaw* (1975), 34 Ill. App. 3d 616, 619, 339 N.E.2d 461.) The establishment of the reliability of an informant is not restricted to a showing of his "previous reliability," as measured by prior arrests and convictions. (*People v. Kopple* (1969), 105 Ill. App. 2d 68, 73, 245 N.E.2d 134, *aff'd* (1970), 46 Ill. 2d 17.) The court may consider other factors such as the informant's statement against his penal interest, the affiant's own knowledge of defendant's activities, corroboration of the informant's tip, or a "more than ordinarily detailed description of the suspect's criminal activities * * *." (*People v. Lindner* (1975), 24 Ill. App. 3d 995, 998, 322 N.E.2d 229.) In *People v. Kopple* (1970), 46 Ill. 2d 17, 19, 262 N.E.2d 444, the Illinois Supreme Court held that an informant's reliability was established where the affidavit indicated that the affiant was present and heard the informant telephone defendant and place a bet with him. In *People v. Collins* (1977), 45 Ill. App. 3d 544, 549, 359 N.E.2d 1147, the affiant personally observed the informant enter the house in question having only a $20 bill in his possession and then emerge minutes later with two packets containing heroin. The court stated at page 549:

> "The evidence was not conclusive that the informant bought the heroin from the defendant but entirely aside from the question of the informant's credibility, the circumstances were sufficient to make it quite believable that he purchased the heroin while in the house and since it was the defendant's apartment he went into, it is logical to suppose that he purchased it, as he related, from the defendant. Thus, the question of the informant's reliability as a person is not critical in establishing that he bought this particular heroin on this particular occasion at this particular location. It would require straining the imagination to conclude otherwise."

The court concluded that the affidavit was sufficient to show the

informant's reliability and to support issuance of the search warrant under the *Aguilar* test. See also *People v. Smith* (1979), 69 Ill. App. 3d 752, 387 N.E.2d 1084.

■■ The affidavit in the case at bar contained allegations similar to those held sufficient to establish the informant's reliability in *Kopple* and *Collins*. Agent Miller stated that agents were present when the informant telephoned "Tom" at the apartment to arrange for a sale of amphetamines. The informant was strip-searched and then kept under surveillance by the affiant while he entered the apartment. The affiant observed informant enter the apartment possessing $150 and exit from the apartment with 1,000 tablets purportedly containing amphetamine. These allegations were sufficient to establish the reliability of the informant.

■■ Furthermore, it should be noted that in determining whether to issue a warrant, a court may consider exigent circumstances which indicate an "imperative necessity for quick action." (*People v. McNeil* (1972), 52 Ill. 2d 409, 413, 288 N.E.2d 464.) In the case at bar the affiant alleged that the additional 9,000 tablets of amphetamine would be available only for a period of two hours. It was reasonable to conclude from the allegations in the affidavit that the evidence to be seized would exist only for a short period of time. Thus, even if there existed a question as to the informant's reliability, the circumstances present in the case at bar were sufficient to permit prompt issuance of the warrant.

Based on the foregoing we reverse the order of the circuit court of Cook County and remand the cause for further proceedings.

*Reversed and remanded.*

DOWNING and HARTMAN, JJ., concur.