THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENIO BORGES *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 79-889, 79-913 cons.

Opinion filed September 17, 1980.—Rehearing denied October 17, 1980.

Irwin L. Frazin, of Chicago (Harris Sperber and Angelo Ali, of Miami, Florida, of counsel), for appellant Eugenio Borges.

Lance Haddix and Manuel A. Segarra, both of Chicago, for appellant Carmelo Flores.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendants, Eugenio Borges and Carmelo Flores, were each charged in two counts with the unlawful possession and delivery of heroin. After a trial without a jury, defendants were found guilty of both offenses. Borges was sentenced to a term of 12 years; Flores was sentenced to 10 years. Defendants contend on appeal that the court erred in denying their motion

to suppress the evidence, that the State wrongfully spoiled evidence, and that they were not proved guilty beyond a reasonable doubt. In addition, Flores contends that he was denied the effective assistance of counsel. (A third defendant, Artimyo Rosa, pleaded guilty to possession of a controlled substance, received a sentence of 6½ years, and is not involved in this appeal.)

Prior to trial, the court conducted a hearing on defendants' motion to suppress the evidence. At that hearing, Officer Steven Kuhn of the intelligence division of the Chicago Police Department was the sole witness.

Kuhn testified that on September 22, 1977, at about 2:45 a.m., he and his partners arrested defendants outside a food store in Oak Park, Illinois, without a warrant. At approximately 1 a.m. on the same date, Kuhn and Officer Thomas Riley met with a confidential informant whom Kuhn had known for a year. On five previous occasions, the informant had supplied information which proved to be true and reliable. Narcotics had been recovered in each instance. In three of the previous instances, arrest warrants were being sought; in the fourth instance, a person had been arrested and indicted and was awaiting trial; and on the other occasion, two arrests had been made and the accused had forfeited their bonds.

The informant told the officers that he had just talked to Artimyo Rosa at a bar. Kuhn had met Rosa in connection with narcotics investigations. Rosa told the informant that he was going to a store owned by Borges to buy heroin. Rosa was waiting for the bar to close at 2 a.m. so that the bartender, Louis Mercado, could drive him to the store. Mercado was described as Puerto Rican, 5 feet 7 inches, 160 pounds, with a full beard. Rosa would be riding in a blue Chevrolet, license plate number KN6309.

The officers set up a surveillance outside the store, some 250 feet away. Kuhn had binoculars which gave him the same view he would have had by standing 25 feet from the store. Although there were signs in the front window, the officers had an unobstructed view of the store through the glass doors. Shortly after 1:40 a.m., Borges drove into the parking lot in a Cadillac. Borges emerged from the vehicle and after taking a brown paper shopping bag from the trunk, he entered the store. Borges placed the bag on the checkout counter. Kuhn kept the bag under observation. At 2:30 a.m., Rosa arrived in a blue Chevrolet driven by Mercado. Borges unlocked the door and admitted Rosa into the fully lighted store. Rosa and Borges walked to the checkout counter where they were joined by Flores. Kuhn had not seen Flores enter the store. After the three men conversed, Flores reached into the bag and removed a package. Flores took an object from his pocket, inserted the object in the package, placed it in the bag, and handed the package to Rosa. Rosa held the package to his nose and returned it to Flores. Flores placed the package back in the bag, and Borges gave the bag to Rosa. Rosa exited the store and departed in the Chevrolet. The officers followed for a short distance and halted the vehicle. Kuhn

informed Rosa and Mercado that they were under arrest and ordered them out of the automobile. Kuhn recovered the brown bag containing the powder in the passenger side of the front seat. Rosa stated that he had just purchased the heroin. The officers returned to the store and arrested defendants when they emerged. After hearing argument, the trial court denied defendant's motion to suppress evidence.

At trial, Kuhn gave substantially the same testimony he had given at the hearing on the motion to suppress. When Flores removed the package from the shopping bag in the store, he pierced the package with a pocket knife and handed the opened package to Rosa. Kuhn observed Rosa hold the package to his nose and look at its contents. Rosa's actions constituted a "street test" for heroin, in which the purchaser checked the odor and color of heroin for quality. When Kuhn recovered the shopping bag from the Mercado vehicle, there were no other shopping bags inside the automobile. Subsequently, other shopping bags were found in the trunk. Kuhn recognized the recovered shopping bag as being the same one as he saw in the store because it had the "Raggedy Ann" label. When Kuhn removed the bag from the automobile, he discovered it contained a number of packages. The top package had a puncture, enabling him to see a brown powder which appeared to be heroin. Kuhn testified that as a matter of police procedure, in cases where a large quantity of a controlled substance is acquired, only a representative sample over 30 grams is kept by the police department and the remainder is destroyed for security reasons. This procedure was followed in the present case. Kuhn did not observe money exchange hands.

Officer Christine Provost, a chemist for the Chicago Police Department, testified for the State that she had analyzed the items recovered by the police officers. She conducted several tests on samples from the powder recovered, and she determined that the brown powder was heroin. The remaining powder in custody was set aside for destruction.

Officer Thomas Riley was called as a witness by the defense. For 13 years, his police assignment was concerned with narcotics. During any particular transaction, money may or may not be exchanged. Where money is not exchanged, the contraband could be purchased on consignment. While it is highly unusual for a store owner to be involved in a heroin transaction in the front of a brightly lit store, Riley had seen many narcotics transactions occur in public or on an open street.

Defendant Borges testified that he owned the grocery store located at 25 Lake Street in Oak Park. He always left the lights on as a precaution against burglars. On the morning in question, at about 1 a.m., Flores came to his home to ask him to drive to the store to recover Flores' car keys. Upon arrival, he opened the trunk of his automobile and Flores and he each took a bag of empty soda bottles into the store. They placed the bags of bottles on the checkout counter. Borges heard a car horn and unlocked the store door

to admit Rosa. Borges knew Rosa from Puerto Rico but had not seen him for 10 to 15 years. Rosa just happened to be in the neighborhood and stopped to visit. Borges gave Rosa several cartons of cigarettes in a brown shopping bag. Borges escorted Rosa outside to the Chevrolet, Rosa placed the cigarettes in the trunk of the vehicle, and Borges then returned to the store. Borges denied giving or selling heroin to Rosa.

Defendants initially contend that the trial court erred in denying defendants' motion to suppress the evidence. They argue that the police informant was not shown to be reliable and there existed no probable cause for the police to arrest Rosa and search the Chevrolet.

We first shall comment on the standing of defendant to challenge the legality of the search of the Chevrolet automobile which produced the evidence against them. In *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, the United States Supreme Court held that persons who were charged with crimes of possession were entitled to claim "automatic standing" to challenge the legality of searches. Very recently, the court specifically overruled *Jones* and held that defendants charged with possession may claim the benefits of the exclusionary rule only if their own fourth amendment rights have in fact been violated. (*United States v. Salvucci* (1980), ___ U.S. ___, 65 L. Ed. 2d 619, 100 S. Ct. 2547.) Consequently, since defendants had no possessory interest in the Chevrolet automobile it would appear that they have no standing to challenge its search. Yet, the issue remains as to whether the *Salvucci* holding will be applied retroactively or merely prospectively. Since we believe the search was proper, we consider it unnecessary to confront that issue.

■■ Upon review, the trial court's finding of probable cause will not be disturbed unless manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) Probable cause exists where the circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing an offense has been committed and that the person arrested committed the offense. (See *Brinegar v. United States* (1949), 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302.) Where the information obtained by the arresting officer forming a basis for his actions is derived from an informant, there must be a showing of prior reliability or an independent corroboration of the information supplied by the informant in order to establish probable cause. See *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 62, 87 S. Ct. 1056; *People v. Wilson* (1970), 45 Ill. 2d 581, 262 N.E.2d 441.

■■ In the present case, Officer Kuhn knew the informant for approximately one year. He had received information from the informant on five previous occasions, and in each instance, narcotics were recovered. Convictions, while demonstrative of an informant's previous reliability, are not essential to establish the reliability. (*People v. Walker* (1975), 34 Ill. App. 3d

120, 339 N.E.2d 265; *People v. Davis* (1975), 28 Ill. App. 3d 30, 328 N.E.2d 89 (abstract); *People v. Packer* (1974), 25 Ill. App. 3d 332, 323 N.E.2d 39 (abstract).) Moreover, the informant told the police in some detail that Rosa, a known drug purchaser, soon would be participating in a major heroin transaction at a time and place certain. The informant described the quantity of the contraband, the vehicle in which Rosa would be riding, and the name of the driver and license plate number of that vehicle. Such factors as a detailed description of a suspect's criminal activities may be considered in determining informant's reliability. (*People v. Derry* (1979), 73 Ill. App. 3d 721, 392 N.E.2d 301.) In addition, the information supplied by the informant was corroborated independently by the police officer's personal observation of what transpired in the store. Under all the facts and circumstances, the officers had probable cause to make the arrest and the search, and the court correctly denied defendants' motion to suppress the evidence.

Defendants also contend that the State failed to prove them guilty beyond a reasonable doubt. They point to a number of discrepancies and contradictions in Officer Kuhn's testimony which they claim raise a reasonable doubt of guilt, including the fact that Kuhn did not have a continuous and unobstructed view of the premises and shopping bag; the fact that Kuhn also lost sight of the shopping bag when Rosa reentered the automobile; Kuhn's failure to account for the arrival of Flores; and the unbelievable nature of Kuhn's testimony that a narcotics transaction occurred in the front of a brightly lighted store.

■■ In our view, the record contains ample evidence to support defendants' convictions. The discrepancies are minor. Kuhn testified that during his surveillance, his attention was diverted from the shopping bag on several occasions but the shopping bag always remained in the same position. He observed defendants in the store conducting the transaction with Rosa at the checkout counter. Kuhn's failure to account for the arrival of Flores and his testimony concerning the location and circumstances of the transaction are matters which go to the weight given to the testimony and the credibility of the witnesses. In a trial without a jury, it is the duty of the trial court to weigh the evidence and determine the credibility of the witnesses. (*People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812, *cert. denied*, 440 U.S. 974, 59 L. Ed. 2d 792, 99 S. Ct. 1542.) A reviewing court may not substitute its judgment for that of the trial court, and will reverse a criminal conviction only when the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In a narcotics case, the testimony of a single law enforcement officer, if positive and credible, is enough to support a conviction. (*People v. Parson* (1963), 27 Ill. 2d 263, 189 N.E.2d 311; *People v. Mickelson* (1975), 32 Ill. App. 3d 813, 336 N.E.2d

806.) We believe that the testimony of Officer Kuhn was clear, consistent and convincing, and that it was sufficient to prove defendants guilty beyond a reasonable doubt.

Defendants also contend that the State wrongfully spoiled evidence. Officer Kuhn testified at trial that when he entered the store after arresting defendants he took from the checkout counter a brown paper bag which contained markings identical to those on the bag containing the heroin. Kuhn stated that the second bag was never inventoried. He had placed it in the squad car, and it disappeared.

In *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 394 N.E.2d 1340, the court discussed the requirements for a showing of denial of due process to a defendant through the destruction of evidence. The court held that when a general request for discovery is made, the duty upon the prosecutor to respond depends upon several factors: whether the evidence is obviously exculpatory; whether the evidence is favorable to defendant; and whether the missing evidence is material. Since the motion for discovery in the present case was general, the requirements set forth in *Hovanec* are applicable. And there has been no showing of the obviously exculpatory nature of the second bag taken from the store after defendant's arrest. The issue was the contents of the bag Rosa took from the store, not whether a bag later recovered in the store was identical to the one recovered from Rosa. Even if the missing bag was not identical to the one recovered, the missing evidence in no way would demonstrate that Rosa did not take a bag of heroin out of the store. There was no denial of due process to defendants in the disappearance of the second bag from the squad car.

Defendant Borges further maintains that the State wrongfully destroyed the heroin. The issue of spoliation of the heroin was first raised by Borges in his reply brief. Since reply briefs are limited to responses to arguments already made, the raising of new issues is impermissible. (Supreme Court Rule 341(g) (Ill. Rev. Stat. 1979, ch. 110A, par. 341(g)).) We therefore will not consider this additional issue.

We find no merit in the final contention of Flores that he was denied the effective assistance of counsel. Flores alleges that his privately retained counsel failed to make an opening statement, made a limited number of objections during trial, asked only one question of a defense witness, and failed to present any evidence in mitigation at the sentencing hearing.

The standard for determining the competence of privately retained counsel is that a court of review will not reverse a conviction for ineffective assistance of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduce the court proceedings to a farce or a sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Defendant bears the burden of establishing the actual incompetence of his trial counsel and substantial prejudice resulting therefrom. *People v.*

*Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.

■■ From our examination of the record, it appears that prior to the joint trial of defendants, counsel for both defendants, because of the virtually identical factual and defense positions of the two accused, agreed to have counsel for Borges conduct the examination of all witnesses. This was a matter of trial strategy and does not render the representation by counsel for Borges as incompetent. Moreover, we are unable to perceive, and defendant does not suggest, how counsel's failure to make an opening statement prejudiced defendant in this trial without a jury. And notwithstanding Flore's assertion to the contrary, the record shows that counsel argued in mitigation that Flores was married, had four children, was gainfully employed, and had been a member of the community for many years.

Flores received effective representation. His trial counsel made timely, though few, objections to testimony. He presented two motions for a mistrial, and after Flores was found guilty, counsel argued a motion for a new trial. The claim of ineffective representation is without merit.

For the reasons stated, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

SIMON and RIZZI, JJ., concur.