(No. 22814.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VINCENT LUCANIA, Plaintiff in Error.

*Opinion filed April 17, 1935.*

JAMES M. BURKE, GEORGE M. CRANE, and HERBERT G. IMMENHAUSEN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error, Vincent Lucania, (hereinafter called the defendant,) was indicted in the criminal court of Cook county for the commission of the crime against nature upon and with Harold Langford. The defendant was found guilty by a jury and was sentenced to the penitentiary. He has sued out this writ of error to review the judgment.

Harold was a pupil in the fifth grade and was ten years old. His testimony tends to prove the commission of the

offense per os between 4:30 and 5:00 P. M. on March 19, 1934, in the gymnasium room in the basement of the North Avenue-Larrabee Y. M. C. A. building, in Chicago. At the time, a handball game was in progress in the adjoining room. The door to the gymnasium was not locked. Quite a number of boys and young people were in and moving about the building. Harold testified the act was accomplished by a young man who said he would wrestle with Harold and David Irvin. The evidence shows that the offense was not committed by consent and solicitation but some force was used. Harold testified he did not know the man perpetrating the offense but he was dressed in gray pants and blue sweater, with the numeral "12" on the back of the sweater. On the evening of March 20 he described the person as having curly hair and wearing gray pants.

David Irvin, (hereinafter called David,) twelve years of age and an uncle of Harold, testified that he was with Harold just before and immediately after the commission of the offense; that the defendant sent him out of the gymnasium room for some toilet paper, and that he returned in about three or four minutes. It is charged that the offense was committed during this interim.

At the suggestion of William Mitchell, boys' secretary of the Y. M. C. A., Harold and David visited the gymnasium for about an hour each day after the commission of the offense. Edward Ryan, assistant physical director, testified he saw the defendant on March 20 at the gymnasium dressed in a gymnasium suit, with the numeral "12" on his white shirt. Ryan reported this fact to Stephen Barak, the physical director. Barak testified that there could be several shirts about the gymnasium with the numeral "12" thereon. Harold testified that a week after the occurrence Mitchell gave his father a card with the name "Vincent Lucania" written thereon, and the father told Harold the name of the man. About March 26, Bin-

ney, an officer of the Y. M. C. A., told Harold and David to go to the swimming pool. While there they saw a young man standing on the diving board. Harold says he then recognized the man as the one who committed the offense. Later, at the police station, Harold and David identified the defendant. David testified on cross-examination that at the police station, when Harold said, "I think that is him," Harold's father, Esco, said to Harold, "You got to be sure." Police officer Swanson testified that as he was taking David, Harold and Esco home in the officer's automobile he heard one of the boys, (which boy he was not able to state,) evidently discussing the matter of the identification of the defendant, say to the other, "I am not quite sure." There is some evidence, which is contradicted, that the defendant said he had wrestled with Harold and David. The defendant's home was searched by the police. They found athletic clothes, including sweaters, but no sweater with a numeral "12" on it.

The defendant testified that he was nineteen years old; that he was a high school graduate; that he helped his brother in the undertaking business; that he had been a member of the Y. M. C. A. for seven years, and went to the "Y," both before and subsequent to March 19, about twice daily; that he was there on March 19, 1934, with Bud Wieting, Ed. Ringhofer and Ed. Wemlinger; that the four young men practiced basketball from about 2:30 until 4:30 P. M.; that they then took a shower and swim, dressed, and left the gymnasium about 5:00 o'clock; that he did not see Harold or David that afternoon; that he did see them at a later day walking around the gymnasium with Mitchell and saw them the day he was in the swimming pool. He denied that he had committed the criminal offense, and denied that he ever had any blue sweater with the numeral "12," or any other numeral, on it. He testified relative to the occasion at the police station when it is alleged he was identified by Harold and David, that

a police officer had asked one of the boys, "Is this the fellow?" The boy answered, "No, that isn't him." The officer then said, "Are you sure it isn't him?" and the boy answered, "No, I don't think that is him." The other boy then said, "Well, it looks like him." The father then grabbed the first boy by the shoulder, shook him around, and said, "Well, is it him or isn't it? I am getting fed up with this." The boy then said, "It is him." The defendant further testified that he had taken a subpœna to Wemlinger's home for the purpose of subpœnaing him but was there informed that he was out of the city. Wieting and Ringhofer both testified that they were at the Y. M. C. A. gymnasium on March 19 in the company of the defendant; that they were with him constantly from 2:30 to 5:00 o'clock, practicing basketball and then swimming; that the four men left the gymnasium together shortly after 5:00 o'clock, and all of them were then fully clothed. They both fixed the date of March 19 by the fact that they had met on Sunday, the 18th, and discussed the coming "Y" basketball tournament and the Chicago Evening American basketball tournament. Each was a member of a different team entered in the tournaments and had started practicing for them on the 19th. Both testified they had not seen Harold or David in the gymnasium on the 19th. These two alibi witnesses were vigorously cross-examined but their testimony was not shaken. There is evidence in the record tending to contradict David on some material matters, but it is not necessary to set those forth here. The father did not deny the defendant's testimony that at the police station the father took hold of and shook his son and made the statements as testified by the defendant.

There is much merit in the defendant's complaint that the evidence of the alleged identification of the defendant at the police station some two weeks after the commission of the alleged offense was incompetent because on that occasion the defendant denied his guilt. The difficulty con-

fronting the defendant here is that no objection was made by him in the trial court to the admission of the evidence here complained of, and he is therefore in no position to raise in a court of review the question of the incompetency of such evidence.

The character of the crime here charged is of a revolting nature. The perpetration of such offense naturally arouses the prejudices and passions of the citizens against anyone accused of such a heinous offense, particularly so where the offense is against a child. By reason of aroused public feeling there is always great danger that the accused will be greatly handicapped in his defense and not receive a fair and impartial consideration of his case at the hands of the jury. It therefore becomes particularly important in cases of this type that the evidence be carefully scrutinized in order to determine whether any passion or prejudice has influenced the verdict of the jury. While this court is committed to the rule that in criminal cases the jury is the judge of the facts, the weight of the evidence and the credibility of the witnesses, yet where the testimony on which the conviction is based is of an unsatisfactory nature this court will not hesitate to reverse. *Keller v. People,* 204 Ill. 604; *Cunningham v. People,* 210 id. 410; *People v. Blanch,* 309 id. 426; *People v. Langaas,* 339 id. 267; *People v. McPheron,* 354 id. 381; *People v. Dinenza,* 356 id. 118.

In our judgment the evidence of the identification of the defendant, when taken in conjunction with the testimony of the apparently disinterested witnesses on the subject of the alibi, is not of that satisfactory and convincing nature upon which a conviction should rest.

The judgment of the criminal court will be reversed and the cause remanded for new trial.

*Reversed and remanded.*