THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID RODRIQUEZ, Defendant-Appellant.

First District (4th Division)   No. 77-442

Opinion filed March 30, 1978.

James J. Doherty, Public Defender, of Chicago (Lee McMahon and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth McCurry, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

David Rodriquez (hereinafter called "defendant"), was charged with indecent liberties with a child, deviate sexual assault and rape. The jury returned verdicts of guilty as to indecent liberties with a child and deviate sexual assault. They were unable to reach a verdict on the charge of rape and a mistrial was declared as to that count. The defendant was sentenced to the penitentiary for not less than six nor more than 15 years.

The issues presented for review are whether the defendant was proven guilty beyond a reasonable doubt and whether the defendant was improperly convicted because of inconsistent jury findings.

According to the prosecutrix, Maria Montejano Sandoval, on October 11, 1973, she was raped and deviately assaulted. She and her friend, Wanda Torres, left her home at 2104 South California, Chicago, Illinois, at about 8:30 in the evening. They walked toward Harrison High School. They remained sitting near the high school for awhile and then left to pick up another friend, Wanda Flores, who lived at 24th and Francisco. Returning with the third girl, they sat near a statue on Marshall Boulevard and 24th Street.

The area around the statue is a place where people usually congregate; however, there was no one else there at that time and the girls left. They walked and sat down near a car close to Francisco Avenue, a dead-end street.

While they were sitting near a house across the street from the high school, Dippy Dan, whom Maria Sandoval, the prosecutrix, had seen before, came up, talked with Wanda Flores, left and returned with three friends. Wanda introduced the three as Crazy Rubin (Rubin Garnika), Tarzan and Angel. The young people sat and talked for a few minutes. After the conversation, Sandoval and Crazy Rubin got up and walked about five houses down the street from where they had been sitting.

After the complainant and Rubin had walked the short distance of above five houses, Rubin pushed her into a gangway, but she did not fall. Once in the gangway, the two of them talked, after which she allowed him to hug and kiss her. Within five minutes Wanda Torres came to about three feet from the gangway and said to Sandoval, "Let's go home." Sandoval replied, "In one moment." Wanda Torres then turned and walked away. Sandoval did not ask her to wait.

After a few more minutes of kissing, Rubin said he wanted to have sex with Sandoval and she replied she was not that type of girl. They argued, she said he offered her money which she refused and he showed her what

she believed to be an I.D. card for the Northwestern Railroad. After the conversation, Sandoval said she was forced to the ground and Rubin put his penis in her vagina.

The complainant said while she was on the ground seven other individuals entered the gangway. She identified the defendant as one of the group and said he came over to her and pulled down her pants which she had previously pulled up. She further stated he then placed his penis in her mouth and holding her head with his hands made her go up and down. This was followed by anal penetration and then intercourse. The others in the gangway watched and laughed. Finally, a third man then put his penis into her mouth, anus, and vagina. After the third man finished, they let her go and she walked out of the gangway, whereupon the others also left.

The prosecutrix first testified the defendant was the second one to have sex with her. She later stated he was not, and then again said he was. On cross-examination, she agreed at the grand jury proceedings in this cause she had said the defendant was the third one to have sex with her.

After Sandoval left the gangway she walked toward Harrison High School, saw two police officers and told them she had been raped. They pursued the individuals but were unable to apprehend them, so they returned and took her to St. Anne's Hospital. She talked to the officers at the hospital, told them what happened and gave them the names she knew. She was examined and released.

On cross-examination, Sandoval admitted she did not tell the police or the examining doctor, both of whom she saw immediately after the incident, of the oral and anal acts of her assailants. In fact, she did not tell anyone of these acts until July of 1975, about nine months after the incident.

The prosecutrix was 15 years old at the time of the occurrence, and was 18 years old, married, and a mother at the time of the trial.

Officer Shenberger testified the complainant was upset and crying during their conversation at the hospital. She told him of going into the gangway, of being threatened and of being raped by three individuals. She did not say any of them had performed oral sex with her. She gave him two names, Rubin and Rocket.

Dr. Bordell E. Celewcyz testified from his records he saw the complainant in the emergency room of the hospital on October 11, 1973. He had conducted a physical examination of the complainant and the notes showed she had edematous hyperemic introitis and labia majora with traces of fresh blood and a perforated hymen. In layman's terms the area around the entrance to the vagina, as well as the lips of the external genitalia were swollen, reddish in color and in a form of trauma. The hymen was perforated, indicating the hymen was not virginal, and fresh

blood was found in the area, which did not show indications of being from menstruation. His notes showed he gave her no treatment. On cross-examination, Dr. Celewcyz stated his report did not indicate he examined the complainant's rectum.

David Rodriquez, the defendant, testified in his own behalf. Prior to this case he said he had never seen the complainant and he did not commit the acts complained of by her. When called upon in August of 1977, 10 months after the occurrence, to explain his whereabouts on the date of the incident, he was unable to do so.

The defendant did not know Rubin Garnika. He did know a Dapper Dead Eye and had met another young Latin who resembled him and was called Little Rocket. The defendant had previously lived at 2511 South Trumbull, Chicago, had attended school in the area and still saw people there, although he now lived on the north side of the city.

After all of the evidence had been introduced, the jury found the defendant guilty of deviate sexual assault and indecent liberties with a child. They were unable to reach a verdict on the charge of rape and the court declared a mistrial. The defendant was sentenced to the penitentiary for not less than six nor more than 15 years. This appeal follows.

■■■ The Illinois Supreme Court has, in numerous cases, held where a conviction of a sex crime depends on the testimony of the prosecuting witness and the defendant denies the charge, the testimony of the prosecutrix, unless it is clear and convincing on its own, must be corroborated. (See *People v. Carruthers* (1942), 379 Ill. 388, 41 N.E.2d 521; *People v. Vaughn* (1945), 390 Ill. 360, 61 N.E.2d 546.) Since a sex charge is easy to make and most difficult to defend, proof of corroboration is necessary for a proper prosecution whenever the testimony of the prosecutrix is anything less than clear and convincing. Of course, the fact that a prosecutrix made a complaint immediately after the occurrence is allowed to be shown and is accepted as corroboration of her testimony. *People v. DeFrates* (1946), 395 Ill. 439, 70 N.E.2d 591.

In the case at bar the prosecutrix testified before the grand jury the defendant was the third person to have sex with her in the gangway. At trial, she testified the defendant was the second one, then said he was not and then again said he was. As to the alleged initial rape by Rubin, the prosecutrix admitted hugging and kissing Rubin, while in the gangway, and refusing an offer by her girl friend to leave. When testifying with regard to being forced into the sex acts, the prosecutrix admitted she put up only a mild struggle and did not scream, even though such actions would have probably brought help from nearby.

Of great importance is the fact the prosecutrix made no complaint to any police officers, doctors or anyone else as to oral copulation and anal

penetration until about nine months after the occurrence. Although she told a police officer and an examining physician of the rape immediately following the incident and she willingly underwent a vaginal examination, no complaint was made of any deviate sexual conduct and no rectal examination was ever given.

Ordinarily a reviewing court will not disturb a jury verdict when it is supported by sufficient evidence for the jury to draw its conclusion of guilt beyond a reasonable doubt. It is, however, the duty of the appellate court to examine the evidence and to apply the law of the case (see *People v. Lucania* (1935), 360 Ill. 150, 195 N.E. 640; *People v. Claudio* (1971), 3 Ill. App. 3d 309, 279 N.E.2d 39). In this case the prosecutrix did not corroborate the charge of indecent liberties or deviate sexual assault by making an immediate complaint to anyone, and neither were there physical indications on her person to support the charge. The law requires an immediate complaint in sex cases (see *Carruthers* and *Vaughn*), yet she said nothing for nine months.

■■ Since the testimony of the prosecutrix was not clear and convincing and since there was no substantial corroboration of her story as to deviate sexual assault, the defendant was not proven guilty of deviate sexual conduct or indecent liberties beyond a reasonable doubt.

The defendant also maintains he was improperly convicted because of the inconsistency of the jury findings. He argues the jury was inconsistent in failing to reach a verdict on the rape charge, for which a mistrial was declared, and in convicting the defendant of deviate sexual assault and indecent liberties.

With regard to the rape charge, the prosecutrix complained to police immediately after the occurrence. She was taken directly to the hospital where a vaginal examination was conducted, revealing positive proof of penetration of the vagina.

With regard to the charge of oral copulation, which is an element of deviate sexual assault and indecent liberties with a child, no complaint was made by the prosecutrix until about nine months after the incident.

Since the prosecutrix's testimony was the only evidence as to both deviate sexual conduct and indecent liberties, the fact that the jury did not convict the defendant of the rape charge, although she made an immediate complaint to the police and corroboration of the prosecutrix's testimony existed in the nature of a positive vaginal examination, indicates her testimony was not sufficiently reliable. Therefore her testimony, uncorroborated, charging the defendant with deviate sexual assault and indecent liberties with a child at the same time and place and as part of the alleged rape is not sufficient to support the deviate sexual assault and indecent liberties with a child convictions.

For the foregoing reasons the judgments of the circuit court of Cook

County convicting the defendant for the crimes of deviate sexual assault and indecent liberties with a child are hereby reversed.

Reversed.

JOHNSON, P. J., and LINN, J., concur.