THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS LAUGHLIN, Defendant-Appellant.

First District (3rd Division)   No. 86—0205

Opinion filed October 28, 1987.—Rehearing denied December 2, 1987.

Steven Clark and Paul Alexander Rogers, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Alison Jean Willis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant Thomas Laughlin was charged by information with one count of unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10—3(a)) and two counts each of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13(a)(1), (a)(3)) and aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(2), (b)(1)). After a jury trial defendant was convicted of aggravated criminal sexual assault and sentenced to 10 years in the Illinois Department of Corrections.

Defendant appeals and raises the following contentions: (1) the testimony of complainant, the mother of the victim, could not be believed beyond a reasonable doubt and therefore defendant's conviction should be reversed; (2) three errors at trial combined to deprive

defendant of a fair trial by arousing the sympathy and passions of the jury and injecting irrelevant evidence into the case; and (3) defendant's 10-year sentence is excessive and based on an improper sentencing factor.

For the reasons stated below we affirm the judgment of the trial court.

The evidence at trial indicated the following. Complainant was defendant's common law wife. The alleged victim is complainant's 3½-year-old son. Complainant testified that she put the alleged victim to bed at about 9 p.m. on August 8, 1984. At about 3 a.m. the next morning, she was awakened by screams. Complainant went to the bathroom, where the screams were originating, and pushed open the door. She saw defendant standing in the bathroom holding the alleged victim in front of him in front of the toilet. The alleged victim's pajama bottoms were on the floor and the drawstring on defendant's pajama bottom was open. The alleged victim was crying and screaming that defendant had hurt him. Complainant told defendant to let go of the boy and hand him to her, which defendant did. Defendant told complainant that the alleged victim was crying because he was constipated. Complainant washed the boy and noticed a small spot of blood on his buttocks. Defendant had gone downstairs and did not return to the bedroom. Complainant held the boy for a while, and then put him to bed.

Later that morning complainant telephoned Roseland Hospital but was told that the doctor was unavailable at that time. Complainant thereafter took the alleged victim to a clinic to see Dr. Pascual Sales. Dr. Sales examined the alleged victim, including his rectal area. After the examination, complainant told Sales that defendant was with the alleged victim in the washroom at about 3 a.m. and that defendant had said that the boy was in pain because he was constipated. Dr. Sales gave complainant suppositories to relieve the boy's pain. Complainant testified that she also examined the alleged victim's rectum that morning and noticed that it was red and that the boy "was torn."

Complainant put the alleged victim to bed that evening at about 9 p.m. At about 3 a.m. on August 10, 1984, complainant again was awakened by screams. She went to the washroom and knocked on the door. Defendant responded that he was using the washroom. Complainant tried to open the door but it was locked. She went to the alleged victim's room and noticed that he was not in bed. Then she returned to the washroom and kicked in the door. She saw defendant holding the alleged victim on top of the closed toilet seat. She said

that defendant had his erect penis inside the alleged victim's rectum. The alleged victim's pajama bottoms were on the floor and defendant's pajama bottoms were hanging down below his waist. The alleged victim was crying and screaming, "[M]ommie, he hurt me. He is hurting me." Complainant asked defendant to let go of the alleged victim but defendant refused. Complainant then got a shotgun from the closet and held it up to defendant. She again asked defendant to release the alleged victim and defendant again refused. Complainant said she was afraid that if she pulled the trigger she would hit the alleged victim, so she returned the gun to the closet and removed the bullets from the gun.

Complainant then went back to the washroom and told defendant that she thought she saw him doing something. Complainant testified she said that to defendant because defendant would not let go of the alleged victim. Defendant then released the boy. Complainant noticed blood and semen on defendant's penis and on the boy's rectum. Complainant took the alleged victim and held him and then washed him. Defendant had gone downstairs and complainant believed that after a time defendant left the house. After defendant left, complainant telephoned Roseland Hospital in an attempt to contact Dr. Sales but was unable to reach him. Complainant took the alleged victim to Dr. Sales' clinic some time that morning and waited for several hours, but was unable to see Dr. Sales. A nurse told complainant that the doctor would not be in the office until about 4 p.m. Complainant said she "got tired of waiting" at the clinic and then took the boy to Cook County Hospital. Complainant said she was at the hospital at about 3 p.m. While at the hospital, complainant spoke to Dr. Connie Blade, who examined the alleged victim, and to Mr. Wilson Watt. Complainant did not tell Dr. Blade of the incident with defendant until after Blade examined the alleged victim. Complainant testified that either Blade or Watt telephoned the police on her behalf.

After complainant arrived home with the alleged victim, she received a telephone call from the police. She then went to the police station and told police what had happened. The next day, August 11, 1984, complainant returned to the police station and signed a complaint alleging that defendant sexually assaulted the alleged victim.

At trial the State then called Dr. Constance Blade as an expert witness. Blade testified that she examined the alleged victim on August 10, 1984, after complainant telephoned Cook County Hospital and asked Blade if there was a test that could be done to determine whether a child had been abused. Blade's physical examination of the alleged victim revealed nothing unusual except for a small perianal

fissure measuring about five millimeters long and one to two millimeters wide. The fissure was the result of the skin surrounding the rectum being stretched beyond its elasticity. Blade also observed that the boy was "much more withdrawn" than most children of his age and that he was very quiet and did not want to talk to or play with her.

After examining the alleged victim and talking to complainant, Blade requested that Wilson Watt, a social worker experienced in working with children, talk to the boy. Blade testified that based on her seven years' experience in the field of pediatrics, her examination of the alleged victim, and her conversations with Watt and complainant, her opinion was that the boy had been sexually abused. The fissure she observed on the alleged victim was consistent with an adult male inserting his penis into the anus of the alleged victim. She opined that the injury had occurred within eight hours of her examination of the alleged victim. After Blade made her diagnosis, Watt volunteered to call the Department of Children and Family Services (DCFS) to arrange for therapy for the alleged victim.

The State also called Wilson Watt, the social worker assigned to the Protective Services team at Cook County Hospital. Watt testified that his job duties required him to provide consultation in cases where there was evidence from a physician that a child had been sexually abused. Watt consulted with Dr. Blade after her examination of the alleged victim and determined that DCFS should be notified. The police also were notified.

Defendant testified that on August 8, 1984, he returned home with the alleged victim and his other son at about 8:30 p.m., after spending some time at his ex-wife's house mowing her lawn. Defendant went to bed some time before 9 p.m. Complainant arrived home at 9:20 or 9:30 p.m., and defendant spoke briefly with her. Between midnight and 2 a.m., defendant awoke and felt itchy, since he had been cutting grass earlier and had not taken a bath. He got up, took a bath, and clipped his toenails. Complainant then knocked at the bathroom door and asked defendant why he was taking so long in the washroom. Defendant told her he was cutting his toenails, and asked her if she wanted to use the bathroom. Complainant responded that she would wait.

Defendant left the bathroom, and as he passed the alleged victim's bedroom, decided to take the boy to urinate so that he would not wet the bed. Defendant stood just inside the door of the washroom as the boy was urinating. Defendant admitted that the alleged victim was able to use the washroom himself "when he's awake." Defendant testified, however, that he was training the boy to use the

washroom before he went to bed and at night. When they were in the washroom, the alleged victim was whining a little, since he was sleepy. Defendant believed that complainant must have heard the alleged victim whining, because she came to the open bathroom door. Complainant asked what was wrong with the boy. Defendant responded that he was just sleepy. Defendant testified that complainant had told him earlier that week that the alleged victim was constipated, and had asked defendant to help administer a suppository to the boy, but that defendant had refused. Complainant returned to bed, defendant put the alleged victim to bed in defendant and complainant's bedroom, and defendant went back to bed. Defendant testified that on the evening of August 9-10, 1984, he did not take the alleged victim to the bathroom, nor did defendant remember using the washroom himself on that night. Defendant denied that he ever had done any sexual act on the alleged victim.

Dr. Pascual Sales testified as an expert witness on behalf of the defense. Sales testified that he examined the alleged victim on August 9, 1984, after the alleged victim's mother brought him to the clinic and stated that he complained of pain to his anus when he had a bowel movement. Sales conducted a general physical examination of the alleged victim, including an examination of his rectum. He observed a small fissure measuring about one centimeter in the anal area. Sales told complainant about the fissure, and complainant asked the doctor whether the fissure was caused by a molestation. Sales responded that the most common cause of such a fissure was a hard bowel movement. He told complainant that the fissure could have been caused by molestation, but that it would be difficult to find that out. Sales told her that she should be vigilant and that if she suspected an incident of molestation, that the patient should be checked immediately after the incident. Sales prescribed suppositories to reduce inflammation and help healing. Sales testified that if he had suspected child abuse, he would have reported such a belief.

On cross-examination Sales stated that the fissure and the type of swelling and inflammation he observed on the alleged victim could be caused by a male adult inserting his penis into the child's rectum. The condition could be the result of organic causes such as constipation. Sales, however, failed to find any evidence of constipation regarding the alleged victim. Sales admitted that when complainant asked him whether the injury could have been caused by molestation, Sales responded that "fathers do not do that type of thing to their children."

The State presented Dane Cleven as a rebuttal witness who testified that on August 11, 1984, he spoke with defendant at the police

station regarding a report of sexual abuse of the alleged victim. Cleven stated that defendant provided several different versions of what had occurred on August 9 and 10, 1984. Defendant denied taking the alleged victim to the bathroom on either night. Cleven took notes on defendant's statements, but defendant refused to sign a statement.

## I

On appeal defendant initially asserts that the biased, uncorroborated, and inconsistent testimony of complainant could not be believed beyond a reasonable doubt and therefore his conviction must be reversed. Defendant asserts that the State's case depended solely on the credibility of complainant. Further, Dr. Blade's expert opinion that the alleged victim had been abused rested largely on the story that complainant had told her. Therefore, the reliability of Dr. Blade's opinion is directly related to the reliability of complainant.

Defendant asserts that the State failed to utilize several potential sources of corroboration. First, the alleged victim failed to testify. Second, the State failed to produce physical evidence, such as a washcloth or towel complainant allegedly used to wash the alleged victim or the shotgun she allegedly used. Further, defendant asserts, complainant's testimony was inconsistent and implausible in key respects. First, she claimed that Dr. Sales was the alleged victim's doctor, but Dr. Sales testified that he had never seen the alleged victim before August 9, 1984. Second, she told Dr. Sales initially that she had brought the alleged victim for an examination because of painful bowel movements. It was only after Dr. Sales discovered a small perianal fissure that complainant mentioned a possible sexual abuse. Dr. Sales then acknowledged that sexual abuse was a possible cause of the injury, and told complainant to be vigilant. "Rather coincidentally," defendant asserts, complainant claimed to have witnessed an incident of sexual abuse the very next morning. She claimed to have made numerous phone calls to Roseland Hospital in an attempt to find Dr. Sales, but she never located him. Dr. Sales, on the other hand, testified that he never had any problem receiving messages from the hospital, and that the hospital would almost surely contact him if someone called repeatedly.

In addition, complainant failed to contact the police, and instead waited several hours until Dr. Sales' clinic opened to have the alleged victim examined or to report the alleged abuse. Dr. Sales testified that a physician is on duty at the clinic at 10 a.m., and any reported emergencies receive priority treatment. Nevertheless, complainant

stated she waited in vain for several hours at the clinic. When she finally went to Cook County Hospital, she failed to tell Dr. Blade that she had seen blood or semen on the alleged victim or that she had used a shotgun. Complainant also failed to tell the police about seeing blood or semen. Defendant suggests that complainant's testimony may have been invented to "get defendant out of her life," as defendant's testimony indicated that his relationship with complainant had been tumultuous. Defendant also notes that a lawsuit regarding the ownership of the house which defendant and complainant had shared was pending at the time of the instant trial.

▮▮ We hold that there was sufficient credible evidence to convict defendant. A charge of sexual assault is easy to make but difficult to disprove, and thus the need for reliable corroboration is especially acute in such cases. (*People v. Scott* (1950), 407 Ill. 301, 95 N.E.2d 315; *People v. Rodriquez* (1978), 58 Ill. App. 3d 775, 374 N.E.2d 1062.) In such cases, the complainant's testimony must be clear and convincing or corroborated by other evidence. (*People v. Daniels* (1984), 129 Ill. App. 3d 894, 473 N.E.2d 517.) However, "clear and convincing" evidence is not synonymous with uncontradicted or unimpeached testimony. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.) Minor variances in the testimony may occur, and if so, such variances may constitute mere discrepancies which affect only credibility. (*People v. Devine* (1981), 101 Ill. App. 3d 158, 427 N.E.2d 1277.) It is the task of the trier of fact to weigh any discrepancies, and if the discrepancies are so minor as not to detract from the reasonableness of the complainant's story, then the testimony may be found to be clear and convincing. *People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958.

▮ In the instant case, the trial court properly relied on complainant's clear and convincing testimony. Complainant testified that she did attempt to contact Dr. Sales at Roseland Hospital immediately after she discovered that the victim was sexually abused, and she promptly took the victim to be examined as soon as the clinic opened. The other inconsistencies in her testimony may be considered to be minor. Even assuming *arguendo* that complainant's testimony was not clear and convincing, her testimony was sufficiently corroborated. First, both Dr. Blade and Dr. Sales testified that the victim's injuries were consistent with an individual of defendant's size attempting to insert his penis into the child.

▮ We also note that the prosecution's failure to call the 3½-year-old victim does not defeat the conviction. A negative inference may arise where the State fails to call a witness who possesses unique

knowledge of a crucial, disputed issue of fact. (*People v. Zenner* (1980), 84 Ill. App. 3d 566, 406 N.E.2d 27.) However, no negative inference is raised when the witness is also known and available to the defense yet is not called by them. (84 Ill. App. 3d 566, 406 N.E.2d 27.) In the instant case, the defense has failed to assert that the victim was not available to the defense. In any event, in view of the victim's very young age, it is not unreasonable that either prosecution or defense would not attempt to call him to the stand.

▪▪ ▪ Further, the lack of physical evidence in this case is not fatal, as the testimony of complainant, supported by the testimony of the expert witnesses, is sufficient to sustain defendant's conviction. (*People v. Morrow* (1982), 104 Ill. App. 3d 995, 433 N.E.2d 985.) A reviewing court should not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses, and criminal convictions are not subject to reversal unless the evidence is so improbable as to raise a reasonable doubt of the defendant's guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) This rule applies even in those cases involving alleged sexual offenses where the reviewing court has a special duty to scrutinize closely the evidence. (*People v. Muellner* (1979), 70 Ill. App. 3d 671, 388 N.E.2d 851.) If the decision of the trier of fact is to convict and that decision is based on credible and substantial evidence, it will not be set aside because of minor inconsistencies which the trier of fact resolved in favor of the prosecution. (*People v. Smith* (1980), 81 Ill. App. 3d 764, 401 N.E.2d 1017.) We find that the conviction in the instant case is based on credible and substantial evidence and therefore we will not disturb the jury's finding of guilt.

## II

▪▪ ▪ Defendant also contends that three errors at trial combined to deprive him of a fair trial by arousing the sympathy and passions of the jury and injecting irrelevant evidence into the case. Defendant asserts that the accumulated prejudice entitles him to a new trial.

The first alleged error was the prosecution's use of the victim as a "silent witness" in court. Prior to trial, defense counsel's motion to have witnesses removed from the courtroom was granted without objection. The State indicated prior to trial that it did not intend to call the victim to the stand. During the direct examination at trial of complainant, the State's first witness, the victim was present in court. Defense counsel requested a sidebar and objected to the victim's presence in the courtroom, asserting that the prosecution had him in the

courtroom for the purpose of attracting sympathy from the jury. Defense counsel asserted that the child's presence prejudiced defendant, and the defense moved for a mistrial. The prosecution responded that the child was in the courtroom only for identification purposes and that the jury was entitled to know what the victim looked like and his size.

The trial court denied the motion for mistrial and stated that the child could remain in the courtroom only for identification purposes and that after he was identified, he must be removed from the courtroom. After the sidebar and in the presence of the jury, the trial court stated that demonstrations of any kind were not allowed in the courtroom. The court noted that it had been called to the court's attention that defendant had been waving to the child. The court specifically instructed defendant not to do anything else of that nature in the courtroom. Complainant's testimony then continued, she identified the victim, and the child was removed from the courtroom.

Defendant asserts on appeal that the jury had no compelling need to see the victim, since the victim's physical appearance was not in issue and was irrelevant to the charges pending against defendant. The child's small size was obvious from the fact that he was a toddler, and his vulnerability to superior size was irrelevant, since force was not an element of the offenses charged. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1).) Nor did the defense raise an issue regarding the size of the child.

Finally, other equally probative but less inflammatory evidence was available to inform the jury of the victim's appearance and size. For instance, complainant could have described the appearance of her son. Defendant asserts that the prejudice arising in the instant case is similar to that arising from a prosecutor's improper allusions to a decedent's surviving family in a murder case, which practice has been condemned. (*People v. Dukes* (1957), 12 Ill. 2d 334; *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298.) Defendant contends that the prejudice in the instant case was heightened by inflammatory comments made by the prosecution in closing argument, where the prosecutor stated that the victim "couldn't tell you what had happened," but later stated that the victim "cries out today *** cries out for justice." The prosecutor also described the victim as "innocence and purity."

We find no error in the trial court's allowing the victim to be present in the courtroom for the limited purpose of identification. The record indicates that the victim was in the courtroom for a very short time, and was removed immediately after he was identified by com-

plainant, the first witness called. Defendant was not substantially prejudiced by this brief appearance of the victim in the courtroom. Nor was defendant substantially prejudiced by the prosecution's remarks in closing argument. The remarks were within the parameters of legitimate comment. (*People v. Davis* (1982), 104 Ill. App. 3d 512, 432 N.E.2d 1134.) In view of the substantial evidence of defendant's guilt, we do not believe the verdict would have been different had the comments not been made. (*People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634; *People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051, *cert. denied* (1982), 455 U.S. 954, 72 L. Ed. 2d 671, 102 S. Ct. 1462.) Therefore, even if the comments were error, they do not amount to reversible error.

Additionally, since the trial court adequately instructed the jury to disregard statements not based on evidence, the statements may be considered harmless. (*People v. Baptist* (1979), 76 Ill. 2d 19.) Jury instructions in this case were a sufficient cure for any possible prejudice as a result of improper remarks during closing argument. *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339.

■ The second trial error asserted by defendant is the sudden and profane outburst of complainant's sister in open court. During cross-examination of complainant, defense counsel asked whether one of her children had died as a result of an anal disorder. Complainant responded by saying, "A what?" Complainant's sister, who was in the courtroom, then said, "You fucking pervert. She died. Don't you understand?" The court ordered complainant's sister to be taken into custody. Defense counsel moved for a mistrial. The court denied the motion and requested that the jury be removed from the courtroom. The court then told defense counsel that his question was highly improper and had provoked the response from complainant's sister. After the jury returned, the court admonished them to disregard defense counsel's question and the woman's outburst. Further, the court warned the jury to decide the case only on evidence and the law, and not allow emotional factors or outbursts in the courtroom to affect their deliberations.

Defendant asserts on appeal that the potential prejudice arising from the outburst was that it would inject emotion into the case and inhibit rational deliberation by the jury. (*People v. Jones* (1985), 105 Ill. 2d 342; *People v. Haycraft* (1966), 76 Ill. App. 2d 149, 221 N.E.2d 317.) Defendant asserts that the court should not have presumed that the instruction had any effect, but should have inquired of the jury to determine whether the outburst had a prejudicial effect. *People v. Sheridan* (1977), 51 Ill. App. 3d 963, 367 N.E.2d 422, *cert. denied*

(1978), 435 U.S. 975, 56 L. Ed. 2d 68, 98 S. Ct. 1622.

The record indicates that the trial judge excluded complainant's sister from the courtroom immediately after the outburst. This prompt action, along with the trial judge's instructions to the jury, amply protected defendant from any prejudice. Further, the trial judge properly reprimanded defense counsel for asking the question, as the judge found that the question was highly improper. We find that the trial judge acted properly in protecting the interests of both parties. See *People v. Spagnola* (1970), 123 Ill. App. 2d 171, 260 N.E.2d 20, *cert. denied sub nom. Ligue v. Illinois* (1971), 402 U.S. 911, 28 L. Ed. 2d 653, 91 S. Ct. 1389.

■■■ The third error at trial asserted by defendant is that the testimony of Wilson Watt regarding his training and experience as a social worker and the details of his role in investigating this case improperly prejudiced defendant since it bolstered complainant's testimony and the expert opinion of Dr. Blade. At a sidebar during trial the prosecution stated that it wished to call Watt, a Ph.D. in psychology, to testify as an expert and render an opinion regarding whether the victim had been sexually abused. Further, the prosecution asserted that Watt would testify that the victim had told Watt that his father had hurt him and that the victim showed Watt where his father hurt him. Defense counsel objected and the trial court denied the prosecution's request to call Watt, since Watt was not a medical doctor and would be testifying only to a matter of common knowledge and to whether the victim had been truthful in complaining of abuse.

Defendant asserts on appeal that the only relevant purpose for admitting testimony regarding his background would be to establish his credentials as an expert on child abuse. However, as Watt was not called or qualified at trial as an expert witness, defendant asserts that his testimony was improper since it indirectly disclosed the substance of the victim's complaint to Watt. Further, the testimony indirectly indicated to the jury Watt's opinion that the victim had been abused, which testimony the trial court deemed inadmissible. Defendant asserts that the prosecution increased the potential prejudice by making improper comments in closing argument where the prosecution stated that Watt was "a 15-year social worker and a person assigned to child abuse cases," and that Watt "spoke with [the victim] [and] spoke to [complainant]" before he "assessed the situation" and notified DCFS.

We find that Watt properly was allowed to testify regarding his background as a social worker and his position at the hospital in order to establish a foundation for his testimony as to his role in contacting the authorities concerning the reported abuse of the victim. Watt's

testimony was properly restricted and did not amount to expert testimony. Watt was not allowed to testify specifically regarding his experience with interviewing and counseling children. Further, he was not tendered as an expert, nor did he render an opinion regarding whether the victim had been abused.

We also find that the prosecutor's comments during closing argument fail to constitute reversible error. The prosecutor's reference to Watt's background as a social worker and his "assessing" the situation and, "together" with Dr. Blade, deciding to contact DCFS, may have suggested to the jury that Watt's role in the matter was authoritative. However, we find that any possible error resulting from the remarks was harmless in view of defendant's overwhelming guilt. Nor do we believe the verdict would have been different had the prosecutor's remarks not been made.

We find that none of the three trial errors asserted by defendant, taken by itself, constitutes reversible error. In addition, we find that the combined effect of the alleged errors failed to result in substantial prejudice to defendant and fails to constitute reversible error.

### III

Finally, defendant contends that his 10-year sentence is excessive in view of his potential for rehabilitation and other mitigating factors. Defendant asserts that, while the trial court noted several mitigating factors, the aggravating factors presented were insufficient to justify the four-year increase over the six-year minimum sentence. Defendant asserts that the excessive sentence also was improperly based on his persistence in his innocence. Defendant contends that this court should reduce the sentence or remand this cause for a new sentencing hearing.

We note that a trial judge was in the best position to appraise the factors regarding a defendant's character and potential for rehabilitation. (*People v. Cox* (1980), 82 Ill. 2d 268.) A defendant's apparent lack of remorse is properly considered by the trial court. (*People v. Ward* (1986), 113 Ill. 2d 516, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) The determination of whether a sentence was proper depends on a consideration of the record as a whole. (*People v. Sivels* (1975), 60 Ill. 2d 102.) Absent an abuse of discretion, the trial court's sentence should not be altered. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

In the instant case we find no abuse of discretion. The record indicates that the trial court properly considered all appropriate factors in sentencing defendant, including aggravating and mitigating factors.

*(People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056.) Aggravating factors included defendant's prior conviction, the fact that aggravated criminal sexual assault is a Class X felony, the nature of the crime, and the long-term ill effects of the crime on society. In view of the record, we find no reason to alter defendant's sentence.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P.J., and WHITE, J., concur.